[Civ. No. 18258.   First Dist., Div. One.   Sept. 16, 1959.]

JACK L. STOLL, Respondent, v. CHARLES F. MALLORY et al., Defendants; PATRICK H. PEABODY et al., Appellants.

Timothy A. O'Connor for Appellants.

Rankin, Oneal, Luckhardt & Center and J. E. Longinotti for Respondent.

BRAY, J.—Defendants appeal from a judgment of $6,750 in favor of plaintiff for services in the sale of radio station K.S.J.O.

## QUESTIONS PRESENTED

Was nonpayment of commission excused (1) because agreement of sale was unenforceable under federal law; (2) because plaintiff was not licensed under the Corporate Securities Act?

## FACTS

Plaintiff is a licensed real estate and business opportunity broker. In September, 1953, he sent a form letter to K.S.J.O. requesting a listing. Mallory,[1] manager of the station and vice president of the Santa Clara Broadcasting Company, a corporation, its owner, called plaintiff and requested that plaintiff attempt to procure a purchaser for the radio station. Mallory inquired of plaintiff if he worked on the "usual commission basis" and plaintiff said that he did. (This was 5 per cent of the sale price.) Thereafter there was corre-

[1] Mallory was sued as a defendant. The court granted his motion for nonsuit, denying the motions of the other defendants.

spondence between Mallory and plaintiff regarding the price and terms of sale, and the interest expressed by a prospective purchaser. Defendant Peabody, who owned all but about 150 shares of the 7,000 outstanding shares of the company, was aware of and approved the negotiations between plaintiff and Mallory. Plaintiff brought Mallory and Peabody together with prospective purchasers Pett and Allen. At that meeting Peabody told plaintiff that he would get his commission.[2] A memorandum of agreement was then entered into between Peabody as seller and Allen and Pett as buyers for the sale to the latter (subject to the approval of the Federal Communications Commission) of "all of his right, title and interest in and to Santa Clara Broadcasting Company and its radio station K.S.J.O., together with all equipment, land, buildings, supplies and other assets. . . . Incident to this sale, seller guarantees to deliver 100% of the corporate stock of Santa Clara Broadcasting Company." Later, a formal agreement of sale was entered into in which Peabody was the first party, Allen and Pett were second parties, and the broadcasting company was third party. This agreement did not refer to the memorandum, and described the property sold as Peabody's interest in all outstanding shares of the broadcasting company stock "One Hundred Per Cent (100%) of" the stock; also his interest in certain real property. The agreement was not to become effective until it was approved by the commission. The shares of stock were to be pledged with a named attorney until the balance of the purchase price (which was to be paid in installments) was paid. Second parties agreed to vote Peabody on to the broadcasting company's board of directors for a period of at least three years.

Thereafter an application was filed with the commission for approval of the transfer of the station. About 30 days later Pett met Peabody who said that he now did not want to dispose of the station and would like to return the deposit money and have the application withdrawn. Peabody said his reason was that he had been checking on Allen and did not want to have any business relationship with him. On April 2 the commission wrote the broadcasting company to the effect that the provision in the agreement (copy of which had been filed with the application) to the effect that Peabody

[2] Peabody testified that he and plaintiff agreed that payment was to be made only if the sale was completed. Plaintiff denied the qualification. The court found in favor of plaintiff's version. We are bound by that finding.

was to be voted in as a director of the company for three years appeared to be inconsistent with certain of the commission's policies, and stated: "You are requested to submit a verified statement setting forth your views in the above matter." Pett contacted an attorney in Washington, D. C., who discussed the situation with the commission counsel and advised Pett that his information was that there was a 50-50 chance of the commission approving the application without any change in the agreement. Pett's attorney thought that there was "a fair possibility" of the application being granted without the removal of the directorship provision in the agreement. He then suggested another way of protecting Peabody's rights if ultimately the commission should require the removal. He also suggested that if Peabody was not willing to remove the provision, a verified letter be sent the commission, stating why the provision should not be objectionable. Pett reported this to Peabody and two or three conversations were had with Peabody and as Peabody had said he did not want to go through with the agreement, and Peabody offered and paid to Allen and Pett $1,000 each and a return of their deposit money, an agreement rescinding the sale agreement was entered into.

The court found that defendant Peabody engaged plaintiff's services. The evidence that Peabody approved Mallory's negotiations with plaintiff and by directly promising plaintiff that he would pay the commission ratified the arrangement, fully supports this finding. Because of such ratification no written authorization of agency by Peabody to Mallory was required.

The court further found that it was not true that as claimed by defendants the agreement of sale had to be abandoned because the Federal Communications Commission refused to approve the agreement.

1. *Federal Communications Commission Approval.*

█ This is purely and simply a fact case, in which the court found, in effect, that after the seller and buyers had been brought together by a broker employed for that purpose, and the buyers and seller had entered into an agreement of sale, the seller changed his mind about selling and paid the buyers $2,000 to rescind the agreement. While there is considerable conflict in the evidence,[3] it is clear that while

---

[3]In the face of substantial evidence, findings on conflicting fact issues resolved against defendants will not be disturbed on appeal. (*Primm* v. *Primm* (1956), 46 Cal.2d 690, 693 [299 P.2d 231].)

the provision which Peabody required in the final agreement concerning directorship (it was not a condition of the original agreement) was contrary to a rule of the commission, there is no evidence that the commission would not have waived the rule as the Washington attorney said it had in another case. Instead of complying with the commission's request and the instructions of the Washington attorney that the views of the seller and buyers concerning the directorship provision be given the commission, Peabody obtained for a consideration a rescission of the sales agreement, not because of the attitude of the commission, but, as he expressed it to Pett, because he did not want to do business with Allen.

■ A broker has fulfilled the terms of his agreement by procuring a purchaser who is ready, able and willing to buy, and is entitled to his commission even though the seller refuses to consummate the sale. (*Austin* v. *Richards*, 146 Cal. App.2d 436 [304 P.2d 132] ; *Cochran* v. *Ellsworth*, 126 Cal. App.2d 429, 436 [272 P.2d 904] ; see 9 Cal.Jur.2d, § 95 p. 265.)

As heretofore stated, the court on conflicting evidence found that the agreement as to compensation was not dependent upon completion of the sale. Assuming, however, that the agreement was as contended by defendants, nevertheless plaintiff would be entitled to his commission because of the arbitrary rescinding of the agreement of sale by defendants. ■ Even where a broker is not to receive his commission until consummation of a final agreement between the seller and buyer, the agent who has done everything required of him in bringing them together is entitled to his commission where the failure to consummate the sale is due to the seller's arbitrary refusal to proceed with the sale. (*Collins* v. *Vickter Manor, Inc.* (1957), 47 Cal.2d 875, 881 [306 P.2d 783] ; see also *Clark* v. *Dulien Steel Products, Inc.* (1942), 54 Cal.App.2d 92 [128 P.2d 608], where the agreement of sale was voluntarily abandoned by the parties.)

2. *Corporate Securities License.*

■ Sections 25700, 25005, 25006, 25009, Corporations Code, provide, in effect, that no one may sell, offer to sell, negotiate for the sale of, or otherwise deal in any security issued by others, or act in the capacity of a broker or agent required to be licensed thereunder, without such license.

The court found that plaintiff had not violated those sections nor acted as a broker or agent in the sale of a security. Defendants contend that Peabody agreed to sell his stock in the broadcasting company the only way he, a shareholder,

could transfer his ownership in a corporation. Therefore, say they, plaintiff's contract of employment was therefore to obtain a purchaser for Peabody's stock and not having a stockbroker's or agent's license, he cannot recover a commission. (See 9 Cal.Jur.2d, § 74, p. 231.)

The evidence shows that the circumstances of plaintiff's employment do not bring him within the provisions of the Corporate Securities Act. Plaintiff was engaged to secure a purchaser for the radio station business, not to find a buyer for Peabody's stock. Mallory's first letter to plaintiff states: "We would like to receive $150,000 for the *station* . . . " (Emphasis added.) Plaintiff did not learn that Peabody wished to sell his stock until the buyers and seller were brought together. The memorandum of agreement signed by them states that Peabody is selling his interest in the "Broadcasting Company and its radio station K.S.J.O., together with all equipment, land, buildings, supplies and other assets . . ." The memorandum further stated: *"Incident to this sale,* seller guarantees to deliver 100% of the corporate stock . . . delivery of the *assets agreed to be sold* will be made free and clear of all encumbrances . . . " (Emphasis added.) Plaintiff did not participate in the negotiations other than to bring the parties together and at no time did he represent himself as dealing in stocks or offer for sale or negotiate the sale of stock.

In *McKenna* v. *Edwards* (1937), 19 Cal.App.2d 327 [65 P.2d 810], the plaintiff was employed to negotiate a loan to be secured by corporate stock. The plaintiff procured a person who told her that a loan was not feasible but suggested that her employer sell sufficient of his stock to liquidate the indebtedness he desired the loan for. The plaintiff then arranged a conference with her employer, the result of which was a sale of stock. The plaintiff, as plaintiff here, did not participate in the negotiations. In holding that the plaintiff was entitled to her commission the court stated that there was no violation of the Corporate Securities Act for the reason that the plaintiff "at no time engaged in or purported to carry on the business of dealing in stocks; likewise it [the evidence] shows that at no time did she offer for sale or negotiate for the sale of, or sell, any of the Edwards stock." (P. 330.) This statement applies to plaintiff and the Peabody stock.

In *Freeman* v. *Jergins* (1954), 125 Cal.App.2d 536 [271 P.2d 210], the defendant told the plaintiff that if the plaintiff should find a person with whom the defendant could deal for the sale of certain corporate stock the defendant would

pay the plaintiff a reasonable compensation. The court held that in bringing the defendant and such a person together the plaintiff earned his compensation and was entitled to it although he had no securities broker license. The court further held that the plaintiff was not acting as a broker or agent as defined in the Corporate Securities Act. It adopted the principle which has been followed in a line of cases involving finder's agreements where the finder was not a licensed real estate broker. It quoted directly from one of these, *Shaffer* v. *Beinhorn,* 190 Cal. 569 [213 P. 960] : " '. . . the plaintiffs were only required "to find" or "to introduce" to defendant a person "interested" in purchasing and who subsequently did purchase, in order to recover the sum agreed by the defendant to be paid to them. By the terms of the contract, as set forth in the complaint, the "negotiation" of the sale was to be left entirely to defendants. Plaintiffs' only duty was to produce a prospective purchaser. . . . The acts of plaintiffs, therefore, as alleged in the complaint fall short of those defined by the Real Estate Brokers Act as constituting either a real estate broker or real estate salesman.' " (P. 573.)

*Owen* v. *Off* (1951), 36 Cal.2d 751 [227 P.2d 457], is not in point as there the plaintiff was employed by the defendants for compensation to sell their stock. The plaintiff contended that a single isolated sale of stock did not bring him within the Corporate Securities Act. The court properly held that the act covered even one sale of stock. Likewise *Rhode* v. *Bartholomew* (1949), 94 Cal.App.2d 272 [210 P.2d 768], has no application. "The part played by . . . [plaintiff] in the sale of the stock was much more than merely bringing the parties together . . ." (P. 280.) In *People* v. *Hoshor* (1949), 92 Cal.App.2d 250 [206 P.2d 882], the defendant was convicted of selling certificates of interest in partnerships, a security, without first having obtained a license. Obviously this was a violation of the Corporate Securities Act.

The judgment is affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.