[Civ. No. 33139.    Second Dist., Div. One.    Apr. 21, 1969.]

R. LESLIE KELLEY, Plaintiff and Respondent, v. R. F. JONES CO., Defendant and Appellant.

. Cowan & Harris and Henry N. Cowan for Defendant and Appellant.

Richard L. Riemer for Plaintiff and Respondent.

LILLIE, J.—Judgment was entered in favor of plaintiff, as successor to the original lessor, and against defendant for $10,000 (unpaid rental for the last four months under a five-year lease terminating on April 30, 1966) ; a reasonable attorney's fee, pursuant to the provisions of the lease, was also awarded. In rendering judgment for plaintiff, the trial court found against the affirmative defense that the lease was modified by an executed oral agreement between the parties whereunder defendant was authorized to, and did, vacate the premises on November 1, 1965, thus releasing it from the liability eventually sued upon.

Early in 1965 steps were taken by plaintiff (lessor) to secure a possible extension of the lease. Jack C. Henderson, a real estate broker who had originally negotiated the lease for plaintiff, proposed certain renewal terms to defendant's general manager; offers and counter-offers were made over a period of two to three months, but nothing came of them. Meanwhile, Henderson secured an exclusive listing for the entire property, part of which was occupied by defendant. On August 7, 1965, he notified plaintiff by letter that a Pontiac automobile dealership was interested; a few days later plain-

tiff gave Henderson exclusive authority to sell the property for $1,000,000. Henderson then entered into negotiations with a Mr. Pollak of the Pontiac dealership who, on September 14, made a written offer to purchase. To such offer plaintiff on September 28 made a written counter-offer which set the purchase price at $950,000 and included the following provisions here pertinent: ''That there will be deposited in escrow, a communication or writing from the 'Jones Company', owners of a leasehold estate on a portion of the land described herein, verifying the fact that such leasehold estate will be terminated upon the close of escrow or the 31st day of December, 1965, whichever date is the later.'' Pursuant to such offer and counter-offer, an escrow was opened under date of September 30, 1965, with Title Insurance and Trust Company; one of the terms thereof expressly provided that the closing of escrow was contingent upon the ''Buyer obtaining a letter from R. F. Jones Co. terminating his tenancy at a date acceptable to Buyer.'' Time was made of the essence, and it was further provided that if the escrow was not in condition to close by January 30, 1966, any party who then shall have fully complied with his instructions might cancel the same.

A letter was secured from defendant along the lines requested, hereinafter quoted in full, under the following circumstances: During his negotiations with Pollak, the latter indicated to Henderson that he wanted possession of the property by December 1, 1965. According to Henderson, he discussed this with plaintiff, telling him that he would contact the Jones people who, he thought, would agree ''in time to save my deal.'' Henderson was then told by plaintiff ''[t]o go ahead and proceed with it because he couldn't make a sale without it.'' Thereafter he discussed the matter with Mr. Klein, defendant's general manager, and Mr. Jones, defendant's president: ''Well, I told them that I had a live prospect to buy the property and inasmuch as they were not going to renew they would have been—they were paying $2,500 a month rent, and Mr. Kelley authorized me to inform them that the new rent would be, say $3,250 . . . something like $3,200. They had decided that they were not going to exercise that option, so as long as they were going to eventually get out of the building at the expiration of the lease, they could— as an accommodation, they could vacate; we were willing to agree they could vacate.'' Klein corroborated the fact of a meeting with Henderson in July or August at which the latter told him that ''General Motors was interested in the building

and that part of the terms was that they would like to have possession of the building earlier than the length of our lease . . . I said as a favor to them, we would be glad to.'' Jones testified to a conversation with Henderson in June or July along similar lines: ''I assured Mr. Henderson personally that our company would cooperate, that we were going to vacate the property and that we would not jeopardize the sale of the building to he or the Kelley Company, whoever it might be; that we would cooperate with them and vacate the building.'' He also testified that he then had no other choice but to enter into a new lease on other premises in August or September of 1965.

The letter required for deposit in escrow was then obtained. Drafted by Henderson, it read as follows:

''September 20, 1965

''Jack C. Henderson Co.
816 West Pico Blvd.
Los Angeles, California

''Dear Mr. Henderson:

You have informed us that you have a sale deal pending for the Kelley property on Figueroa and Pico Blvd. We have a lease at 1269 South Figueroa Street, Los Angeles, a portion of this property that expires on April 30, 1966. We understand that you expect to get this sale in escrow within a few days and that the new buyers have agreed verbally to cancel this lease as of December 1, 1965, if and when the sale is consummated and our lease is assigned to them. We agree to vacate the premises as of December 1, 1965, if you will secure the signature of the new buyer, when the sale is put in escrow, and give us one copy of this letter, in accordance with this understanding.

''Very truly yours,
R. F. JONES COMPANY
Charles R. Klein,
General Manager

''CRK:blw
''Approved:''

The above letter was turned over to the broker representing the Pontiac dealer, but the signature of the buyer (as therein requested) was never obtained. Eventually the escrow was cancelled, and a new escrow for the sale of the property for $960,000 was entered into on January 28, 1966, between plaintiff and one Kay; the latter transaction, with California Bank

as escrow holder, resulted in the sale of the property to Kay on April 1, 1966, when the escrow closed. Defendant vacated the premises on November 30, 1965, the sum of $2,500 prepaid at the onset of the lease was applied to the rental for that month. No rent having been paid for the four remaining months of the lease, judgment was accordingly rendered for the total sum thereof ($10,000) plus a reasonable attorney's fee in an amount fixed by the court.

Summing up, prior to orally finding in plaintiff's favor, the trial court observed that "the key to this law suit really, I think, is this letter of plaintiff's 3" (the letter dated September 20, 1965). Accordingly, Finding of Fact No. IX provides: "That it is true that the defendant R. F. JONES Co. in connection with a proposed sale of the property indicated a willingness to vacate the premises as of December 1, 1965 provided the sale was consummated, provided further that their Lease was assigned to the new buyers, and provided still further that the broker would secure the signature of the new buyer on a copy of a letter submitted by defendant agreeing to the terms thereof; that it is true that said sale was never consummated, that said Lease was never assigned to the buyer, and that the letter was never signed by the buyer nor the terms thereof agreed to by him." The above finding is made the basis of plaintiff's principal argument in defense of the judgment, specifically, that a right which is subject to conditions precedent does not become enforceable until those conditions are satisfied, citing section 1436, Civil Code, which provides that "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." In the present case, plaintiff points out, such conditions precedent were the sale to Pollak and the assignment of the lease to the new buyer; from this it assertedly follows that since the subject conditions were never satisfied, neither plaintiff nor anyone else had the right to require defendant to vacate the premises, and hence defendant's act in abandoning the premises prior to the termination date of the lease made it subject to the claims here adjudicated. With respect to the affirmative defense herein asserted, it is additionally argued by plaintiff that the oral agreement could not have become fully executed on November 30 (when defendant vacated) since plaintiff's request (or offer) to vacate by December 1 in return for a waiver of any further rentals due was an unconditional one which defendant, by its letter of September 20, conditionally

accepted. Citing section 1585, Civil Code,[1] such qualified acceptance is said to be a counter-offer or new proposal, thus extinguishing the original offer.

The above contentions are not, in our view, supported by the facts adduced at the trial. For example, plaintiff asserts that the letter of September 20 was "initiated" by defendant: "The action of the appellant in this case of initiating the letter of September 20, 1965 . . . imposing conditions upon its agreement to vacate, clearly was not an unqualified acceptance and, thus, constituted a rejection and a counter-proposal." The uncontradicted testimony of both Henderson and Klein is that the former composed this letter and requested that defendant through Klein sign it; too, the escrow between the prospective buyer and plaintiff was not opened until after the above letter was written, and the same is true of plaintiff's so-called counter-offer to the buyer which is dated September 28.[2] Clearly the letter of September 20 was for the protection of the buyer—and only the buyer. If it had been approved by him, it would not have altered the respective positions of plaintiff and defendant in relation to each other; his approval would have bound the buyer to terminate the lease provided the sale was consummated and provided the lease was assigned to him. Defendant accordingly argues that this same letter had nothing to do with its obligations to plaintiff which terminated when the premises were vacated in accordance with its asserted prior oral agreement. We think such contentions must be sustained.

Although plaintiff states that the duration of a written lease can be modified only by operation of law or by an instrument in writing (Civ. Code, § 1091), it is settled that an oral modification of a written lease is binding so far as executed. (*Keller* v. *Richbart*, 130 Cal.App. 296, 300 [20 P.2d 55], citing *Julian* v. *Gold*, 214 Cal. 74 [3 P.2d 1009].)

Too, an oral agreement fully executed by one party, if supported by a valid consideration, will constitute a valid modification of a prior written agreement. (*D. L. Godbey & Sons Const. Co.* v. *Deane*, 39 Cal.2d 429, 433 [246 P.2d 946].)

[1]"An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal."

[2]Thus explained is the difference in wording of the September 20 letter which mentions a "December 1" termination date, while the counter-offer refers to termination date of "December 31st."

■ Hence, if Henderson had authority to speak for his principal, his statement to Klein and Jones telling them of the proposed sale and advising them that "as an accommodation, they could vacate; we were willing to agree they could vacate" constituted a promise to terminate the lease as of December 1, 1965, in consideration for defendant's promise to vacate by that time. The further question is presented, therefore, whether Henderson had actual or ostensible authority to enter into the oral modification of the lease.

Although defendant requested a special finding as to Henderson's agency, the trial court found that he possessed neither actual nor ostensible authority on and after September 20 to modify the lease between the parties at bar; there was no finding as to such authority prior to the above date. An agency is "actual" when the agent is really employed by the principal (Civ. Code, § 2299); it is "ostensible" when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him. (Civ. Code, § 2300.) ■ "To establish actual or ostensible authority the principal's consent need not be express. ■ 'Agency may be implied from the facts of a particular case, and if a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, as against third parties who have relied thereon in good faith, that he did not intend to confer such power . . . . ■ An agent's authority may be proved by circumstantial evidence. . . .' " (*Tomerlin* v. *Canadian Indemnity Co.,* 61 Cal.2d 638, 644 [39 Cal.Rptr. 731, 394 P.2d 571].) Plaintiff did not testify at the trial of the present cause. ■ There was evidence that Henderson had acted as plaintiff's agent in negotiating the original lease with defendant; all during the tenancy defendant contacted Henderson whenever there were complaints, and the latter had acted as plaintiff's agent in negotiations for an extension of the leasehold. Too, Mr. Jones testified that he had never seen plaintiff and never had any dealings with him. ■ In *Lee* v. *Helmco, Inc.,* 199 Cal.App.2d 820, 833 [19 Cal.Rptr. 413], this court declared that the testimony of an agent at the trial is admissible to prove either the fact of agency or the extent of the authority. ■ In light of that principle it bears emphasis that Henderson himself testified (as noted earlier) that plaintiff had told him to "go ahead" because "he couldn't make a sale without it." ■ There are these additional principles controlling here: Liability of the

principal for the ostensible agent's acts rests on the doctrine of estoppel and its essential elements are representations by the principal, justifiable reliance thereon by the third party and change of position or injury resulting from such reliance. (*Reusche* v. *California Pac. Title Ins. Co.*, 231 Cal.App.2d 731, 736 [42 Cal.Rptr. 262].)     When Henderson told Klein that "we were willing to agree they could vacate" defendant was justified in relying on such representation; when defendant was sued for unpaid rental, it was injured thereby.     A further principle, likewise governing the problem, is in *Reusche*: "A principal cannot split an agency transaction and accept the benefits thereof without the burdens." (P. 737.)     In the present case, the agreement was made so that plaintiff could be accommodated; through no fault of defendant, the sale was not completed until April 1, 1966. In the circumstances plaintiff is estopped to deny the existence of the agreement simply because it turned out to be a burden rather than a benefit.

    Finally, it is statutory law that an agency may be created and an authority conferred by a precedent authorization or a subsequent ratification. (Civ. Code, § 2397.) In this regard, the second escrow makes reference to *four* leases on the property to be assigned to buyer at the close thereof; however, instructions for the same escrow originally mentioned *five* leases, but the word "five" is deleted and "four" substituted in place thereof alongside the initials of both plaintiff and buyer. Since there is no dispute that there were four other leases in addition to the one between the parties in suit, the conclusion seems inescapable that long after the critical events heretofore related, Kelley by the above actions acknowledged that the lease with defendant had already terminated. Also, the same actions are a complete answer to the claim asserted in plaintiff's brief that "we find no action on the part of respondent indicating compliance with or acceptance of the terms of the counter-proposal. . . ."

    It is true, of course, that whether a written contract has been modified by an executed oral agreement is a question of fact (*MacIsaac & Menke Co.* v. *Cardox Corp.*, 193 Cal.App. 2d 661, 670 [14 Cal.Rptr. 523]); but the evidence here pointed out is uncontradicted. Hence, for the reasons heretofore given, the judgment may not stand.

    The judgment is reversed.

    Wood, P. J., and Fourt, J., concurred.