[Civ. No. 11842. Third Dist. Mar. 17, 1971.]

O. J. WEBER, Plaintiff and Appellant, v.
HAVENER JORGENSEN, Defendant and
Respondent.

76

**COUNSEL**

Lynn S. Carman for Plaintiff and Appellant.

Hamilton & King, Nichols, Rogers & Hamilton and Mark Scott Hamilton for Defendant and Respondent.

**OPINION**

**JANES, J.**—Plaintiff appeals from a judgment of dismissal entered in favor of defendant after a demurrer to plaintiff's complaint for a real estate broker's commission was sustained. Leave to amend was granted, but plaintiff elected not to plead further.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff was at all relevant times a licensed real estate broker whose services were retained in writing by defendant for the purpose of locating a buyer for certain enumerated resort properties operated as Echo Chalet, Inc. The writing by terms of which plaintiff was retained was executed on August 19, 1965, in the form of an exclusive "Authorization to Sell" (a standard form of real estate broker's listing agreement) and was signed by plaintiff as broker and by defendant, in his individual capacity, as owner.

The principal terms of the written listing agreement were that defendant employed plaintiff from August 18, 1965, through November 1, 1965, to find a purchaser for the Echo Chalet resort and marina business, consisting of a lease, a special use permit, a license, improvements and personal property thereon including but not limited to the personal property set forth in the listing agreement, all for a sales price of $165,000, one-fourth down and the balance by payments of $10,000 in October annually with interest at 6 percent per annum. The written listing also contained plaintiff's agreement to use diligence in procuring a purchaser; and defendant promised therein to pay plaintiff a commission of 10 percent whether said property was sold by plaintiff, by defendant, by another agent or through any other source, or whether said property was transferred or conveyed or withdrawn from sale during the time set forth in the listing agreement.

In fact (the complaint continues) defendant "was and is the sole and majority and controlling shareholder of ECHO CHALET, the lessee, permittees [sic] under a special use permit, and licensee under a license, from the United States Government, Department of Interior, Forest Service, of real property with the improvements thereon, located in the County of El Dorado, California and described in the said lease, special use permit and license of ECHO CHALET, INC., which was for 20 year period with three years expired thereof. ECHO CHALET, INC. was the owner of the personal property located thereon. At all times, defendant by and through his said corporation operated a resort and marina business thereon, using said realty, lease, special use permit, license, improvements, personal property thereon and goodwill thereof, known as the Echo Chalet Resort and Marina."

The listing agreement was silent on the subject of the sale of any corporate property in which defendant held an interest, or the shares thereof. At the time the listing was given to plaintiff, however, defendant told plaintiff that defendant would transfer title to the property by transferring all the stock of the corporation to a buyer of the property, as an incident to the sale of the property, and that the stock transfer agreement would be prepared and handled by an attorney and not by plaintiff.

The complaint further alleges that on or about August 19, 1965 (the date of the listing agreement), and on or about August 30, 1965, "and thereafter" during the period of the listing agreement, "plaintiff and defendant orally represented one to the other, and plaintiff and defendant orally modified said listing agreement . . . as follows: plaintiff would receive only $15,000 commission (waiving his right to commission of 10 percent of $165,000), and defendant would accept an offer containing a

$37,000 down payment clause (. . . waiving the terms of said listing agreement . . . calling for a down payment of one-fourth of $165,000)."

Thereafter, within the time fixed by the listing agreement, plaintiff (allegedly "acting in reasonable reliance" on defendant's representations) obtained and communicated to defendant a 10-day offer which conformed to the terms of the listing agreement, as orally modified in the respects above mentioned. The offer, upon which plaintiff bases his claim to a commission, was in the form of a standard deposit receipt, executed by the buyers and signed by plaintiff as broker, and provided for a sales price of $165,000, a down payment of $37,000 in cash, and payment of a $15,000 commission to plaintiff. The offer stated on its face that the buyers were to receive title to the resort "[b]y transfer of all stock in Echo Chalet, Inc.," and that they were to be substituted by election in the place of the existing corporate officers and directors.[1]

Defendant made no objection to any of the terms of the $165,000 offer and did not reject it, but allowed it to expire. Based on the foregoing averments, the complaint alleges that plaintiff fully performed under the listing agreement as orally modified; that he "changed his position in reasonable reliance upon said oral representations of defendant"; that he "refrained from soliciting any offers calling for more than $37,000 down payment" and refrained "from altering the cash payment terms of his commission so as to enable the defendant to obtain the same net cash out of the transaction"; and that he "obtained the offer . . . set forth." By reason of the foregoing alleged facts, plaintiff claims that defendant is estopped to deny due performance.

Lastly, it is alleged that from and after August 20, 1965, and during the remainder of the period of the listing agreement, "the defendant orally represented to plaintiff at all times that . . . [the $165,000] offer was accepted by [defendant]. . . ." Thereby, "defendant prevented plaintiff from obtaining other purchase offers during the said listing period, and as a proximate result thereof, defendant withdrew the property from sale, and by the terms of the said listing agreement . . . , by such withdrawal of the property from sale the defendant became obligated to pay plaintiff his commission of at least $15,000, no part whereof has been paid, and therein defendant has materially breached the said exclusive-right-to-sell

---

[1]An earlier offer was negotiated by plaintiff with the same prospective buyers, but was rejected by defendant. That offer was for $150,000 ($15,000 less than the sales price of $165,000 fixed by the listing agreement) and called for a smaller cash down payment than contemplated by the listing agreement as orally modified. The first offer, like the second (in the amount of $165,000), provided for the "transfer of stock in Echo Chalet, Inc."

listing agreement . . . , and plaintiff has been damaged by the sum of $15,000 with interest at the rate of seven percent from August 30, 1965."[2]

## THE DEMURRER

The demurrer was both general and special. The general demurrer attacked the complaint on the grounds that:

"(a) Its general charging allegations (when read together with the exhibits [the listing agreement and deposit receipt] incorporated therein) fail to state a cause of action;

"(b) It fails to allege that Plaintiff has standing to sue;

"(c) It purports to allege a cause of action arising out of a contract which is void; and

"(c) [*sic*] It fails because the contract sued upon is void as a matter of law."

The special demurrer was grounded on plaintiff's failure to allege facts establishing that he possessed the requisite capacity to sue.[3]

### I.

The first issue to be considered is defendant's contention that there was no effective modification of the listing agreement executed by the parties. If defendant's argument is sound, it would follow that the complaint did not state a cause of action, because the performance alleged by plaintiff would not be the same as that contemplated by the listing agreement.

Defendant points out that by the terms of the listing agreement plaintiff was retained by defendant to obtain a buyer for specifically described real and personal properties upon one set of terms, whereas the complaint alleges that plaintiff obtained, by deposit receipt, a buyer for corporate securi-

---

[2]By his second cause of action—which we find it unnecessary to summarize, in view of the conclusions we will discuss—plaintiff sought in the alternative to recover on a common count the reasonable value of the services performed by him, which he placed at the sum of $15,000.

[3]The hearing of the demurrer was not reported. The order sustaining both the general and special demurrers is general in form, merely sustaining the demurrers "upon each of the grounds stated therein." Defendant's appellate brief goes somewhat beyond the record in referring to issues and arguments which were brought to the attention of the trial judge, and as to the judge's asserted reasons for sustaining the demurrer. We will discuss all contentions raised, however, because the demurrer properly tested the complaint on all issues briefed by defendant.

ties[4] upon another and dissimilar set of terms. Patently, the complaint discloses the inconsistent allegations noted, i.e., defendant's initial handling of the assets as his individual property and the alterations in monetary terms of the contract (e.g., reduction of the down payment from $41,250 to $37,000 and of plaintiff's agreed commission from $16,500 to $15,000).

Civil Code section 1698[5] permits the alteration of a written contract by an "executed" oral agreement. ■ The position taken by plaintiff's complaint is that an oral modification of a written contract is "executed" if consideration is given for it and if it is fully performed by one party; defendant's contention (citing *Pearsall* v. *Henry* (1908) 153 Cal. 314 [95 P. 154]) is that "executed" means "fully performed by both parties."

Supporting defendant's position, there is dictum in *Pearsall* which states, "An oral agreement altering a written agreement is not executed unless its terms have been fully performed. Performance on the one side is not sufficient. There must be a complete execution of the obligations of both parties in order to bring the modification within the terms of the statute [Civ. Code, § 1698]." (153 Cal. at p. 325.) *Pearsall* actually held, however, that the agreement there sought to be established as a modifying agreement "was not a modification or alteration of the written agreements, but was a new agreement superseding those then existing . . ."; the court added that "[t]o such new agreement, substituted for an existing written agreement, section 1698 of the Civil Code has no application." (*Id.* at p. 325.)

In the later case of *D. L. Godbey & Sons Const. Co.* v. *Deane* (1952) 39 Cal.2d 429 [246 P.2d 946] (also a pleading case), the court, noting the existence of a conflict on the issue of "execution" of an oral agreement within the meaning of Civil Code section 1698, held that an oral modification of a written contract is executed within the meaning of that section when one party has fully performed and there was consideration for the oral modification. (*Id.* at pp. 433-434.)

In *Godbey,* plaintiff had contracted in writing to deliver concrete for foundation forms to defendant at $0.76 per cubic foot, the total amount delivered to be calculated by measuring the forms into which the concrete was poured. At a later date—realizing that some concrete would be poured outside the forms—the parties, in order to arrive at a proper amount of cubic concrete work, orally agreed, in lieu of later measurement of the forms, to calculate the amount poured by subtracting a percentage for

---

[4]We will discuss at a later point defendant's separate contention that the complaint fails, in any event, because of plaintiff's failure to possess a securities broker's certificate.

[5]Civil Code section 1698 provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

waste from the amounts shown to have been delivered by daily delivery slips which plaintiff promised to furnish. At the close of the job, defendant refused to recognize the oral modification of the written contract.

The Supreme Court found consideration for the oral modification in plaintiff's alleged promise to furnish the required daily reports of each delivery of concrete and in defendant's relief from the task of measuring the forms upon completion of the job, and, upon such allegation of consideration for the oral modification and of plaintiff's full performance of its part under the terms thereof, it was held that plaintiff's complaint pleaded a cause of action, the court stating that "in cases in which there was adequate consideration for the oral modification, and in which the party relying thereon had fully performed, the contract has been enforced as modified whether or not the other party had performed on his part. [Citations.]" (*D. L. Godbey & Sons Const. Co.* v. *Deane, supra,* 39 Cal. 2d at p. 433.)

The rule of *Godbey* that where an oral agreement modifying a written contract is supported by adequate consideration it may be enforced although executed only on the side of the party seeking enforcement has been criticized,[6] and it is inapplicable in cases under the Commercial Code involving contracts for the sale of goods.[7] Nevertheless, it otherwise remains the accepted interpretation of Civil Code section 1698. (See *Kelley* v. *R. F. Jones Co.* (1969) 272 Cal.App.2d 113, 119 [77 Cal.Rptr. 170]; *Healy* v. *Brewster* (1967) 251 Cal.App.2d 541, 551 [59 Cal.Rptr. 752]; *Eluschuk* v. *Chemical Engineers Termite Control, Inc.* (1966) 246 Cal. App.2d 463, 469 [54 Cal.Rptr. 711]; *Wommack* v. *McClure* (1956) 139 Cal.App.2d 641, 645-646 [294 P.2d 513].) ■ Whether a written contract has been modified by an executed oral agreement is a question of fact. (*Eluschuk* v. *Chemical Engineers Termite Control, Inc., supra,* 246 Cal.App.2d at p. 469.)

■ On the issue of consideration for the oral modifying agreement alleged in the case at bench, we need not discuss the averments of forbearance on plaintiff's part in refraining (because of his reliance on defendant's representations) from the solicitation of other purchase offers. The allegation of plaintiff's agreement, under the oral modification, to accept a smaller commission ($15,000 instead of 10 percent of $165,000) was a recital of adequate consideration, and, coupled with the averment of his full performance by obtaining the $165,000 offer, would permit

[6]See dissenting opinion of Justice Schauer in *Godbey;* 13 Stan.L.Rev. 812, fn. 1 (1961); 40 Cal.L.Rev. 599 (1952).

[7]"A written contract within this division may only be modified by a written agreement or by an oral agreement fully executed by both parties." (Com. Code, § 2209, subd. (2).)

enforcement of the oral modification. (*D. L. Godbey & Sons Const. Co.* v. *Deane, supra,* 39 Cal.2d at pp. 433-434; see 12 Cal.Jur.2d, Contracts, § 182, pp. 400-401.)

## II.

Defendant seeks to support the judgment on the further grounds[8] that the transaction sued upon admittedly involved plaintiff's participation in a transfer of corporate securities; that plaintiff's failure to allege his possession of a securities broker's certificate deprived him of standing or any right to sue for compensation; and that the transaction, insofar as it purports to be based upon a sale of corporate securities, is void.

Placing his reliance on the case of *Stoll* v. *Mallory* (1959) 173 Cal. App.2d 694 [343 P.2d 970], plaintiff contends, under the facts pleaded, that he was not required to have a securities broker's certificate because the shares of stock of Echo Chalet, Inc. were to be sold only as an "incident" to sale of the resort properties.

At the time of the events in question, sections 25005, 25006, 25009, and 25700 of the Corporations Code provided, in effect, that no person could legally sell, offer to sell, negotiate for the sale of, or otherwise deal in any security issued by others, or act in the capacity of a broker or agent required to be licensed thereunder, without a certificate as a securities broker.[9]

Plaintiff admittedly sought to avoid the application of the foregoing provisions of the Corporations Code, and to bring himself within the rule of *Stoll* v. *Mallory, supra,* 173 Cal.App.2d 694, by pleading the effect of the instant transaction as follows: "At the same time and place [as the execution of the original listing agreement] and at all times thereafter, defendant orally instructed plaintiff that defendant would transfer title to the property by transferring all the stock in his said corporation to the buyers,

---

[8]As pointed out in footnote 3, *supra,* the order sustaining the demurrer was general in its terms, specifying only that it was sustained "upon each of the grounds" stated in the demurrer. Plaintiff having elected not to amend his complaint, "[i]f the demurrer is well taken as to any of the grounds stated therein, then the order of the court . . . must be affirmed by the reviewing court." (*Haddad* v. *McDowell* (1931) 213 Cal. 690, 691 [3 P.2d 550]; cf., 2 Witkin, Cal. Procedure (1954), Pleading, § 502, pp. 1492-1493.)

[9]The Corporate Securities Law, now sections 25000-25804 of the Corporations Code, was revised and renumbered effective January 2, 1969. Our references are to the numbered sections in force at the time of the transaction under review.

*as an incident to the sale of the property,* and that the stock transfer agreement would be prepared and handled by an attorney and not by the plaintiff." (Italics ours.)

In *Stoll* the plaintiff, also a real estate broker, was retained to secure a purchaser for a radio station, not to find a buyer of stock. From the outset of the transaction, there was no indication to the broker that any sale or disposition of corporate securities would be involved. After the broker had introduced the prospective buyers to the station manager a memorandum of agreement was entered into *between the seller and buyers,* providing for sale of the capital stock of the broadcast corporation and for delivery of the "assets agreed to be sold" free and clear of encumbrances.

The appellate court, in *Stoll,* agreed with the trial court's finding that the contract between seller and buyers for the transfer of securities was neither contemplated nor included in the original brokerage agreement, but on the contrary was "incident to" a sale of the radio station business as set out in the memorandum of agreement executed *after* the broker had already brought the buyers and seller together. (See also, *Freeman* v. *Jergins* (1954) 125 Cal.App.2d 536 [271 P.2d 210]; *McKenna* v. *Edwards* (1937) 19 Cal.App.2d 327 [65 P.2d 810].)

In *Owen* v. *Off* (1951) 36 Cal.2d 751 [227 P.2d 457], upon which defendant places principal reliance, plaintiff was employed by defendants for compensation to sell their stock. The complaint alleged that the defendants "engaged the plaintiff to find a purchaser for and to sell, or effect the sale of, their 1,275 shares of stock in the Figueroa Building Corporation"; that defendants agreed to pay plaintiff a specified commission; and that through plaintiff's efforts a sale of the stock was effected; but that no compensation was paid to plaintiff. Defendants moved for summary judgment on the basis of a showing by plaintiff's deposition that he was not certificated under the Corporate Securities Act. Plaintiff's counter-affidavit did not deny this disclosure in his deposition but averred in substance that, as a licensed real estate broker, he was originally employed to sell the Figueroa Street Building, and that before he could find a purchaser of the building it was decided for tax purposes to sell the stock in the corporation which owned the real property. *He acknowledged that he was then employed to sell the stock.* He further averred that he found a purchaser "ready, willing and able to purchase" the stock, and that the sale was "a single and isolated transaction" in his real estate brokerage, since he was not engaged in sales of stock or other types of securities. (*Id.* at pp. 752-753.)

Directing its attention to the provisions of the Corporations Code which

we have mentioned, the court in *Owen* stated: "It may be assumed, as insisted by the plaintiff, that he was not in the business of selling securities and that he did not act in the capacity of a broker as defined in the Corporate Securities Act. However, it is incontrovertible that he was employed by the defendants for compensation to sell their stock. The Corporate Securities Act requires the licensing of all such compensated agents. It does not admit of an exception as to a transaction by a person who has been employed for compensation to sell stock." (36 Cal.2d at p. 755.) (See also *Evans* v. *Riverside Internat. Raceway* (1965) 237 Cal.App.2d 666, 674 [47 Cal.Rptr. 187]; *Rhode* v. *Bartholomew* (1949) 94 Cal.App.2d 272, 280-282 [210 P.2d 768]; 9 Cal.Jur.2d, Brokers, § 26, pp. 163-165.)

On the pleaded facts, the present case is distinguishable from both *Stoll* and *Owen*. In *Owen* the complaint directly alleged that "defendants had engaged the plaintiff to find a purchaser for and to sell, or effect the sale of," their shares of stock in a building corporation. Defendant's answer admitted that "plaintiff was engaged to endeavor to sell" the stock owned by defendants. In *Stoll*, as we have pointed out, the plaintiff broker had no knowledge at the inception of the transaction that any sale or transfer of corporate securities would be involved.[10]

In the case at bench, as defendant correctly emphasizes, the complaint discloses that plaintiff (unlike the broker in *Stoll*) knew almost from the outset that the real estate transaction, if successfully consummated, would result in a transfer of defendant's shares of stock in Echo Chalet, Inc. We believe, nevertheless, that *Stoll* points the way to the proper disposition of this appeal. Here the initial alleged agreement between plaintiff and defendant, as set forth in the written listing agreement, makes plain that the transaction proposed was essentially the sale of the real and personal property assertedly owned by defendant as an individual. Especially is this apparent from an examination of the listing agreement itself, and it is equally clear that here, unlike in *Owen,* plaintiff was not then (nor indirectly, later) entering into *a contract to sell stock.*

We accept, as we must, the rule that a contract to sell corporate shares, made by a person without the required certificate from the Corporations Commissioner, is illegal. (Corp. Code, § 25700.) *Owen* and kindred cases affirm the principle that where the conduct of a broker brings him within the proscription of the statute, his contract will not support an action to recover compensation for his services. (See also, 1 Witkin, Summary of Cal. Law (7th ed. 1960), Contracts, § 172, p. 189.) However, such rules

---

[10]The letter soliciting plaintiff's services in *Stoll* stated: "We would like to receive $150,000 for the [radio] *station.* . . ." (173 Cal.App.2d at p. 699.) (Original italics.)

denying relief to parties to illegal contracts are subject to a wide range of exceptions. In each case, the grant or refusal of relief depends upon the public interest involved in the particular kind of illegality, including the policy of the transgressed law. (See, 6A Corbin, Contracts (1962), § 1534, pp. 818-819.) "In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved." (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 151 [308 P.2d 713].)

Moreover, extension of the licensing requirement to a "single or isolated" transaction (see *Owen* v. *Off, supra,* 36 Cal.2d at p. 755) of the character asserted in the case at bench has been criticized as being inconsistent with the statute defining "broker" as one who "engages either wholly or in part in the *business* of selling, offering for sale, negotiating for the sale of, or otherwise dealing in, any security issued by others . . ." (Corp. Code, § 25006, subd. (a)). (Italics added.) (See Note (1959) 12 Stan.L.Rev. 103, 159-162.)[11]

■ We find no public policy objection in the nature of the services alleged by plaintiff in the case at bench. Defendant *was,* in effect, Echo Chalet, Inc.—its *alter ego.* From the complaint, we may infer that the shares of the corporation had been duly issued and were outstanding. Under these circumstances, it would normally be a matter of complete indifference to the buyers allegedly produced by plaintiff whether the resort and marina were being operated by defendant or by the corporation. The buyers, of course, would be at complete liberty to utilize the already existing corporate structure, or to dissolve the corporation and operate the resort in their own proprietary capacity. If they chose the latter course, they would have been free to do so through the medium of an attorney, just as the agreement sued on contemplated that the actual stock transfer was to be handled by counsel, rather than by plaintiff broker. In this era of burgeoning growth and expansion of real estate development, in which many owners of investment property often adopt the corporate form of ownership and organization for tax and other purposes, and in which the services of real estate brokers as well as many other specialists are so often essential to the guidance of property owners in the handling and disposition of their

---

[11]Those most affected are real estate brokers like the plaintiff, whose principals prefer selling their corporation's stock, rather than a sale of its assets, and these brokers are regulated by the Real Estate Commissioner. As the writer of the above cited note points out, the California cases (e.g., *Rhode* v. *Bartholomew, supra,* 94 Cal.App.2d 272) reveal that "the beneficiaries of the isolated transaction doctrine have not been buyers mulcted by fraudulent brokers, but principals who have successfully defended against suits to recover commissions" on the ground that the brokers were not licensed under the Corporate Securities Law. (12 Stan.L.Rev. at p. 160.)

property, we conclude that the strict rule of *Owen* v. *Off* and kindred cases is inapplicable to the transaction pleaded.

The judgment of dismissal is reversed, with directions to the trial court to overrule defendant's demurrer as to all grounds therein stated.

Friedman, Acting P. J., and Regan, J., concurred.