[No. B003977. Second Dist., Div. Six. Feb. 7, 1985.]

JOE A. FREITAS & SONS, Plaintiff and Appellant, v.
FOOD PACKERS, PROCESSORS AND WAREHOUSEMEN LOCAL 865,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
Defendant and Respondent.

1212

**COUNSEL**

Jory, Peterson & Sagaser, Jay V. Jory, Howard A. Sagaser and Cal B. Watkins, Jr., for Plaintiff and Appellant.

Daniel G. Stone and Ismael A. Castro as Amici Curiae on behalf of Plaintiff and Appellant.

Pappy, Kaplon, Vogel & Phillips and Robert D. Vogel for Defendant and Respondent.

**OPINION**

**STONE, P. J.**—Joe A. Freitas & Sons (Employer) appeals from a judgment confirming an arbitration award. (Code Civ. Proc., § 1294, subd. (d).) We reverse the judgment.

The crucial issue is whether the collective bargaining agreement between Employer and Food Packers, Processors and Warehousemen Local 865, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 865) was void, or valid but voidable at the time the arbitration award was rendered. We find the collective bargaining agreement was void because Local 865 was never certified by the Agricultural Labor Relations Board to represent agricultural employees (Lab. Code, §§ 1153, subd. (f), 1159).

FACTS

Employer has been in the agricultural business of growing lettuce and cabbage in the Santa Maria area since 1949. On July 8, 1981, Employer fired a five-man loading crew (Loaders) because of a series of disagreements with Loaders involving their refusal to perform assigned duties and their use of friends, not on the company payroll, as helpers. One of these helpers, Guadalupe Reyes, shot Joe Freitas, Jr. Because of the perceived hostility of Loaders, and their relationship through friendship and marriage to Reyes, Employer assumed that Loaders were involved in the shooting.

Local 865, on behalf of Loaders, filed a grievance against Employer which went to arbitration pursuant to provisions of the collective bargaining

agreement. Loaders were all members of the driver-loader-stitcher (DLS) crew whose functions were to "stitch" cartons into which the field crew packed the lettuce, to load the packed cartons onto trucks and to drive the trucks to the cooler. Local 865 had represented DLS for over 12 years and all the Loaders had worked for Employer for over 6 years.

The issue submitted to arbitration by stipulation was "whether Loaders were discharged for cause and if not, what is the remedy?" Employer contended that Loaders violated their duty of loyalty to it by using Reyes and another nonemployee in the fields as helpers, by Reyes' attempted murder of Joe Freitas, Jr., by Loaders refusal to provide police with the full name and whereabouts of Guadalupe Reyes, and that, contrary to Employer's orders, they contributed to Reyes' decision to shoot Freitas.

The arbitration panel consisted, by stipulation, of one union member, one Employer member and a neutral arbitrator. After the hearing, the neutral arbitrator wrote an opinion and award in which the union arbitrator concurred; the Employer arbitrator refused to participate in the award.

The neutral arbitrator decided that there was no evidence that Loaders were involved in the shooting, and evidence that Reyes helped Loaders occasionally was insufficient to infer that they solicited, encouraged or participated in any way. The neutral arbitrator concluded that Employer failed to sustain its burden of proof that the firing was for cause but evidence indicated that some form of discipline was warranted because Loaders refused to reload cartons which fell from the trucks. Employer rightfully could have discharged Loaders at that time but imposed no discipline. Factors mitigating against discharge were long years of service and lack of prior disciplinary actions.

The award concurred in by the union arbitrator stated that the discharge was not for cause, the appropriate remedy for Loaders' refusal to reload cartons was one week's suspension without pay, and ordered Loaders' reinstatement.

Employer petitioned to vacate the arbitration award (Code Civ. Proc., § 1285) on grounds that the contract providing for arbitration is illegal because Local 865 was not certified as the collective bargaining representative of Employer's agricultural employees as required by California Labor Code section 1159 and therefore the collective bargaining agreement violates California Labor Code sections 1153, subdivision (f) and 1154, subdivision

(g); the award was procured by undue means and the neutral arbitrator exceeded his powers in issuing the award without consulting with the other two panel members; and the award is contrary to public policy in that it requires reinstatement of employees who have engaged in conduct contrary to public policy set forth in Penal Code sections 33 (accessories to crime) and 153 (compounding or concealing a crime). Local 865 counterclaimed to confirm the award, arguing that the contract was valid but voidable. The superior court granted Local 865's motion to confirm the arbitration award, finding that the agreement under which it was rendered was not void, but rather, valid and voidable. It reasoned that "although the Union was never certified by the Agricultural Labor Relations Board as the exclusive collective bargaining representative for the Company's drivers/loaders, both the Union and the Company, both prior and subsequent to the Board's existence, have treated the Union as the exclusive collective bargaining representative for the Company's drivers/loaders and no other Union other than the Union in this proceeding has ever negotiated or signed a collective bargaining agreement with the Company covering the terms and conditions of employment of the drivers/loaders." The instant appeal ensued.[1]

DISCUSSION

I

UNDERLYING COLLECTIVE BARGAINING AGREEMENT VIOLATES THE AGRICULTURAL LABOR RELATIONS ACT

We accepted the Agricultural Labor Relations Board (ALRB) as amicus curiae in support of Employer solely on the issue of whether the lower court erred in holding that, under the Agricultural Labor Relations Act (Act), the collective bargaining agreement was "not void, but rather, valid and voidable."

Both Employer and ALRB contend that the collective bargaining agreement between Employer and Local 865 is void because the Act, passed in 1975, provides: "It shall be unfair labor practice for an agricultural employer . . . (f) To recognize, bargain with, or sign a collective-bargaining agreement with any labor organization not certified pursuant to the provisions of this part." (Lab. Code, § 1153, subd. (f)); and "In order to assure the full freedom of association, self-organization, and designation of

---

[1]Although Employer incorrectly appeals from the statement of decision of April 25, 1983, (see Code Civ. Proc., § 1294, subd. (d)), we deem the notice of appeal timely filed pursuant to Rules of Court 2(c) since a formal judgment was subsequently filed. (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 678 [190 Cal.Rptr. 469].)

representatives of the employees own choosing, only labor organizations certified pursuant to this part shall be parties to a legally valid collective-bargaining agreement." (Lab. Code, § 1159.)[2]

It is uncontested that Loaders are agricultural employees subject to the Act. (§ 1140.4, subds. (a), (b).)

Under the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.), the duty of an employer to bargain collectively with the representative of its employees is not conditioned solely upon certification of the union pursuant to an election process if the union can show majority status. (See *NLRB* v. *Gissel Packing Co.* (1969) 395 U.S. 575, 596-597 [23 L.Ed.2d 547, 568, 89 S.Ct. 1918].)

■ On the other hand, the Act conditions a union's representation of employees solely upon certification by the ALRB pursuant to the election process specified in section 1156 et seq. The general legislative purpose of section 1153, subdivision (f) is to prohibit an employer from entering into a "sweetheart" arrangement with one of two or more competing unions, "and to make it clear that under the ALRA, unlike the NLRA, an exclusive bargaining representative may be designated only on the basis of a secret representation election, and not by the presentation of union authorization cards or any other less reliable method sanctioned under federal law." (*Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 859 [176 Cal.Rptr. 753, 633 P.2d 949].)

The Supreme Court in *Highland* stated that although the legislative hearings themselves contain no direct reference to section 1153, subdivision (f) as such, a law review article, written by a law professor who served as labor law consultant to the Agricultural and Services Agency in drafting the Act, describes the purpose of the section. The article, *The Agricultural Labor Relations Act of 1975-La Esperanza de California Para el Futuro* by Herman M. Levy, states in pertinent part:[3] " 'One new provision contained in the ALRA makes it an unfair labor practice for an employer to recognize, bargain with, or sign a collective bargaining agreement with any labor organization not certified pursuant to the Act [citing section 1153, subdivision (f)]. This section ties in with the election procedure of the Act, which specifies that the sole means by which a labor organization can achieve certification as a bargaining representative is to win a secret ballot election conducted by the board. These sections thus prohibit voluntary recognition of a labor organization by an employer based on authorization cards signed

---

[2] All statutory references are to the Labor Code unless otherwise indicated.
[3] 15 Santa Clara Law. (1975) 783, 789-790.

by the employees and presented by the labor organization, a practice permitted by decisions interpreting the NLRA. The ALRA's certification procedure reflects the feeling that the best method for determining the employees' choice of a bargaining representative is via the secret ballot election.' (*Ibid.*) (Fns. omitted.)" (29 Cal.3d 848, 860.)

■ The record indicates that in September 1975, subsequent to the Act, Local 865 petitioned the ALRB for certification as the collective bargaining representative for Employer's field workers and driver-loaders. An election was held and Local 865 received a majority vote. The United Farm Workers of America, filed objections and, subsequent thereto, Local 865 withdrew its petition for certification.[4]

Local 865 contends that it withdrew its petition for certification because it disclaimed an interest in representing the field workers but continued to represent the drivers-loaders. As a result, it argues further, the Local 865 contracts remain valid and voidable since Local 865 has not been decertified and no other union has won an election and been certified as the exclusive representative. This argument is based upon a statement of legislative intent in section 1.5 of the Act that "collective-bargaining agreements between agricultural employers, and labor organizations representing the employees of such employers entered into prior to the effective date of this legislation and continuing beyond such date are not to be automatically canceled, terminated or voided on that effective date; rather, such a collective-bargaining agreement otherwise lawfully entered into and enforceable under the laws of this state shall be void upon the Agricultural Labor Relations Board certification of that election after the filing of an election petition by such employees pursuant to section 1156.3 of the Labor Code." (Stats. 1975, Third Ex. Sess., ch. 1, § 1.5.)

In June 1979, the International Union of Agricultural Workers (IUAW) was certified by the ALRB as the exclusive collective bargaining representative for all agricultural employees of Employer in San Luis Obispo and Santa Barbara Counties.

Local 865 contends that although the unit description of IUAW's certification includes "all agricultural employees of the employer," the only employees who voted in that election were field workers and that Local 865 continued to represent the drivers/loaders for purposes of collective bar-

---

[4]We denied Employer's motion to take judicial notice of certain documents pertaining to certification of IUAW. However, a copy of the June 19, 1979, certification of IUAW by ALRB was an exhibit attached to Employer's moving papers in the lower court, was considered by that court without objection, except as to scope of coverage, and, therefore, is part of the record on appeal.

gaining. The contract in question, executed August 1979, is entitled "Driver-Stitcher-Loader Agreement."

We are faced with an anomalous situation: a union which obtained a majority vote by secret ballot at one time by Employer's agricultural employees decided it did not wish to represent all employees, and another union which was later certified to represent all agricultural employees of Employer does not seem to be representing part of them.

Although there is no indication that, prior to the instant suit, Employer objected to either union's procedure, this de facto splitting of employee units is in direct violation of the Act which provides that "[t]he bargaining unit shall be all the agricultural employees of an employer . . . ." (§ 1156.2.) ■ The legislative intent of this section is to facilitate promotional opportunities for field workers and enable an employer to negotiate and continually deal with one union for all of its agricultural workers. (See *Vista Verde Farms* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 307, 323-324 [172 Cal.Rptr. 720, 625 P.2d 263].) "With respect to the appropriate unit, the ALRA provides that it must consist of *all* agricultural employees of an employer, in contrast to the NLRA which allows the NLRB broad discretion as [*sic*] the size and nature of the unit for the election. The ALRB has some limited discretion to choose the unit when there are two or more non-contiguous geographical areas involved. One persuasive reason for including all employees in the unit, rather than permitting the board to choose from a variety of units, was that this approach would allow one union to represent both the field workers and the more highly skilled farm employees. It was felt that this type of representation might facilitate the advancement of the less skilled employees to the higher paid skilled positions, while representation of the skilled and unskilled employees by different unions might well hamper this desirable objective." (Levy, *The Agricultural Labor Relations Act of 1975, op. cit supra,* at pp. 796-797, fns. omitted, italics in original; *Vista Verde Farms, supra,* at pp. 323-324.)

■ Therefore, even if Local 865's contracts were valid but voidable prior to June 1979, once IUAW was certified to represent all agricultural employees of Employer, by the terms and intent of the Act, Local 865's contract was void. We find distinguishable cases cited by Local 865 concerning failure to bargain with a union between apparent election victory and formal certification (*Highland Ranch* v. *Agricultural Labor Relations Bd., supra,* 29 Cal.3d 848) and the duty to bargain with a certified union which continues until such time the union is decertified. (*Montebello Rose Co.* v. *Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1 [173 Cal.Rptr. 856].)

## II

### ENFORCEMENT OF AWARD WOULD VIOLATE SPIRIT OF ALRA AND CONTRA-VENE PUBLIC POLICY

█ Should we nonetheless hold Employer to the arbitration clause as urged by Local 865? █ The power of an arbitrator to determine the rights of the parties depends upon the existence of a valid contract under which such rights might arise. (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 610 [204 P.2d 23].) █ Furthermore, parties cannot be estopped from relying on defenses based on considerations of public policy, such as illegal contracts. (*Black* v. *Cutter Laboratories* (1955) 43 Cal.2d 788, 806 [278 P.2d 905].)

█ As a general rule, courts will not enforce illegal contracts or arbitration awards rendered pursuant thereto. (See *American & Nat. etc. Baseball Clubs* v. *Major League Baseball Players Assn.* (1976) 59 Cal.App.3d 493, 498 [130 Cal.Rptr. 626].) Nevertheless "rules denying relief to parties to illegal contracts are subject to a wide range of exceptions. In each case, the grant or refusal of relief depends upon the public interests involved in the particular kind of illegality, including the policy of the transgressed law." (*Weber* v. *Jorgensen* (1971) 16 Cal.App.3d 74, 84-85 [93 Cal.Rptr. 668].) █ In the instant case, Employer could have refused to negotiate with Local 865. (See *Dessert Seed Co.* v. *Brown* (1979) 96 Cal.App.3d 69 [157 Cal.Rptr. 598]; *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 39 [160 Cal.Rptr. 710, 603 P.2d 1306].)[5] Instead, Employer accepted the benefits of the agreement and used the union representative to resolve disputes with Loaders.

We recognize the apparent inequities of allowing the Employer to avoid the contract and the concomitant arbitration. Nonetheless, we cannot fashion an equitable remedy for Loaders without enforcing the precise conduct made unlawful by the Act in contravention of the legislative purpose. (*Kaiser Steel Corp.* v. *Mullins* (1982) 455 U.S. 72, 84 [70 L.Ed.2d 833, 844, 102 S.Ct. 851]; *Highland Ranch* v. *Agricultural Labor Relations Bd.*, *supra*, 29 Cal.3d 848, 859.) Application of the doctrine of estoppel, as Local 865 urges, would engraft upon the ALRA the exact provision that the Legislature refused to adopt from the NLRA—voluntary recognition of a union that can show majority status but has not been certified. When Local 865 withdrew its request for certification, it estopped itself from representing the employees who voted for it. The aggrieved employees may be able to seek

---

[5]Unlike the NLRA, the ALRA has no provision for an employer-initiated election. (*Montebello Rose Co.* v. *Agricultural Labor Relations Bd.*, *supra*, 119 Cal.App.3d 1, 28.)

redress from Local 865 or the IUAW who have apparently ignored the express terms and intent of the ALRA.

We reverse the judgment of the superior court and vacate the arbitration award.

Gilbert, J., and Abbe, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 16, 1985. Kaus, J., and Grodin, J., were of the opinion that the petition should be granted.