**SHOCHET SECURITIES, INC., Plaintiff,**

v.

**FIRST UNION CORPORATION, Defendant.**

Civ. No. 86–6426.

United States District Court, S.D. Florida, N.D.

July 6, 1987.

Michael Solomon, Hallandale, Fla., for plaintiff.

Richard T. Woulfe, Ft. Lauderdale, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the defendant's *ore tenus* motion for summary judgment. The court heard oral argument on the motion on May 21, 1987.

This is an action to recover a broker's or finder's fee. In December 1983, plaintiff Shochet Securities, Inc. ("Shochet") arranged for defendant First Union Corporation to purchase a discount brokerage company, Dis-Com Securities, Inc. First Union did purchase Dis-Com. Plaintiff is now suing to recover a broker's or finder's fee.

The defendant has moved for summary judgment in order to clarify the application of Fla.Stat. §§ 475.41 and 475.01(3) to this transaction.

Florida Statutes, § 475.41 prohibits the payment of any "commission or compensation" for the acts of a "broker" unless that person seeking the "commission or compensation" is a licensed real estate broker under Chapter 475. Section 475.01(3) defines a "broker" as one who engages in certain types of actions and transations including

> ... a person who ... takes part in the procuring of ... purchases ... of business enterprises or business opportunities ... or leases, or interest therein, or who directs or assists in the procuring of prospects ... which does, or is calculated to result in a sale ... and who ... expects ... any compensation or valuable consideration....

Fla.Stat. § 475.01(3). The term "broker" also includes any person who is a partner, officer, or director of a partnership or corporation which acts as a broker. *Id.*

Defendant First Union contends that plaintiff may not receive a commission because plaintiff was not a real estate broker at the time of the transaction in question. Plaintiff raises three defenses. First, it alleges that the "savings clause" of Fla. Stat. § 475.17(3) would allow plaintiff to recover a commission or compensation even though it was not properly licensed. Second, plaintiff argues that the transaction in question was the sale of *stock* and as such is covered by the provisions of Chapter 517

of the Florida Statutes. Finally, plaintiff contends that Chapter 475 is unconstitutional under Article 3, Section 6 of the Florida Constitution (1968 revision).

## SAVINGS CLAUSE

█ Upon the enactment of Fla.Stat. § 475.41, the legislature also enacted § 475.17(3) which provided that all "individuals" who had been engaged in the sale of, *inter alia,* business enterprises on January 1, 1982 were exempt from the licensing statute for two years. Plaintiff contends that because it had been engaged in the business of acting as a finder for business interests prior to January 1, 1982 it was excused from the licensing requirement in December 1983.

Plaintiff's position is incorrect. The Florida courts which have addressed the issue have concluded that the savings clause, Fla.Stat. § 475.17(3) applies only to individuals. *See Hannah v. City Federal Savings and Loan Association,* 500 So.2d 235 (Fla.Dist.Ct.App.1986). Since plaintiff is a corporation, it is not covered by the savings clause of Fla.Stat. § 475.17(3).

## SALE OF SECURITIES vs. SALE OF BUSINESS ENTERPRISE

█ Plaintiff contends that the sale in question was the sale of the *stock* of Dis-Com Securities, Inc., not a sale of a "business enterprise[ ] or business opportunit[y]." As such, argues plaintiff, Chapter 517 of the Florida Statutes governs the licensing requirements of those who arrange such sales. Plaintiff was at all time registered in good standing as salesmen or dealers of securities under Fla.Stat. § 517.-12.

Defendant argues that the sale of Dis-Com Securities, Inc. to First Union constituted a sale of a business enterprise under Fla.Stat. § 475.01(3) and that the licensing provisions of Chapter 475 apply.

The Florida Statutes and case law are silent on the issue of whether a stockbroker must have a real estate license in order to obtain a commission for a sale of stock, as argued by plaintiff. However, the instant case involves more than the sale of a portion of Dis-Com's stock. Instead, through its purchase of Dis-Com stock,

First Union purchased the entire, ongoing business of Dis-Com. (See plaintiff's Complaint, ¶ 12).

The language of Fla.Stat. §§ 475.01(3) and 475.41 is clear. The licensing provisions apply whenever a broker is involved in the "sale, exchange, purchase, or rental of business enterprises or business opportunities ... or any interest in or concerning the same.... Fla.Stat. § 475.01(3). Without question, the acquisition of an ongoing business of a corporation is one of the transactions contemplated by Fla.Stat. § 475.01(3).

The case law of other jurisdictions with similar statutes is in accord. *See e.g., Springer v. Rosauer,* 31 Wash.App. 418, 641 P.2d 1216 (1982) ("A person authorized to find a buyer for all of the stock of a corporation for compensation has been held to be a real estate business opportunity broker within the meaning of this statute.")

## UNCONSTITUTIONALITY OF CHAPTER 475

█ Plaintiff contends that Chapter 475 violates Article 3, Section 6 of the Florida Constitution (1968 revision) which reads as follows:

> Every law shall embrace but one subject and matter properly connected therewith, the subject shall be briefly expressed in the title....

The test to be applied in determining whether a statute passes constitutional muster under Article 3, section 6 is "whether the title sufficed to give notice of the subject of the statute so as reasonably to lead interested persons to inquire into the body of the act." *Peeples v. Pilcher,* 423 So.2d 907, 908 (Fla.1982). Plaintiff argues that the 1982 amendment of Chapter 475 failed to give adequate notice that individuals or corporations dealing in business enterprises or business opportunities would be covered by its provisions.

House Bill 1757 (Chap. 80–405), effective January 1, 1982, amended Fla.Stat. § 475.-01 by including the following underlined words:

> (3) "Broker" means a person who, for another, and for a compensation or valu-

able consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraises, auctions, sells, exchanges, buys, rents, or offers, attempts or agrees to appraise, auction, or negotiate the sale, exchange, purchase, or rental of *business enterprises or business opportunities or* any real property or any interest in or concerning the same, including mineral rights or leases, or who advertises or holds out to the public by any oral or printed solicitation or representation that he is engaged in the business of appraising, auctioning, buying selling, exchanging, leasing or renting *business enterprises or business opportunities or* real property of others or interests therein, including mineral rights, or who takes any part in the procuring of sellers, purchasers, lessors, or lessess *of business enterprises or business opportunities or* the real property of another....

    \*    \*    \*    \*    \*    \*

(6) "Real property" or "real estate" means any interest or estate in land *and any interest in business enterprises or business opportunities,* including any assignment, leasehold, subleasehold, or mineral right....

This amendment entirely redefined "real property" and "real estate" and included a previously unregulated activity and class of persons, i.e., business brokers, within its provision.

The title of House Bill 1757 (Chap. 80–405) reads as follows:

An act relating to real estate; creating s. 475.1825, Florida Statutes; providing that certain registrations which have expired shall be considered inactive; providing for conditional repeal; amending s. 475.01(3) and (6), Florida Statutes, *redefining "broker" and "real property" as used in provisions regulating real estate brokers, salesmen and schools;* creating s. 475.17(3), Florida Statutes, providing qualifications for practice; providing for conditional repeal; providing an effective date. (emphasis added)

While it is true that "[t]he constitution does not require that the title of the act contain a synopsis of all means by which the objective of the law is to be accomplished," *Griffin v. State,* 396 So.2d 152, 156 (Fla.1981), the title must be "sufficiently informative to obviate fraud or surprise from hidden provisions not indicated in the title." *State v. Cummings,* 382 So.2d 683 (Fla.1980).

Even recognizing that state statutes are clothed with a presumption of validity, *State v. Metz Construction Co.,* 285 So.2d 598 (Fla.1973), Fla.Stat. § 475.01, as amended, cannot withstand this attack on the adequacy of its title. The title of House Bill 1757 (ch. 80–405) gave notice that it was "redefining 'broker' and 'real property' as used in provisions relating to real estate brokers, salesmen and schools." However, the new definitions included activities and persons which were previously uninvolved with real property and real estate. The title to House Bill 1757 could not reasonably have led interested persons, in this case business brokers and securities dealers to inquire into the body of the act. *See Peeples,* 423 So.2d at 908. For that reason, Fla.Stat. § 475.01(3) violates Article 3, section 6 of the Florida Constitution and cannot be applied against plaintiff Shochet Securities, Inc. Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

1. The Motion for Summary Judgment of the defendant be and the same is DENIED.

2. This Order involves a controlling question of state law as to which there is a substantial ground for difference of opinion. Immediate appeal from this Order may materially advance the ultimate termination of this litigation. 28 U.S.C. § 1292(b). An application for appeal shall stay the proceedings in this case until such time as the appeal is resolved.