[Nos. B032751, B034590. Second Dist., Div. Three. June 21, 1989.]

ALL POINTS TRADERS, INC., Plaintiff and Appellant, v.
BARRINGTON ASSOCIATES, Defendant and Respondent.

COUNSEL

Nagler & Schneider and Marc E. Rohatiner for Plaintiff and Appellant.

McCambridge, Deixler & Marmaro, Bert H. Deixler and Shinaan S. Krakowsky for Defendant and Respondent.

John K. Van de Kamp, Attorney General, Arthur C. de Goede, Assistant Attorney General, William M. Pfeiffer and Steven A. Sokol as Amici Curiae, upon the request of the Court of Appeal.

OPINION

ARABIAN, J.—

### INTRODUCTION

This appeal raises the issue of whether an investment banking firm which specializes in mergers and acquisitions must possess a real estate broker's license when negotiating the sale of a business opportunity offered by a corporation seeking to transfer all of its stock to a prospective buyer. We hold that they must so possess.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and appellant All Points Traders, Inc., doing business as Sprink, Inc. (All Points), is a California corporation whose sole shareholders prior to the sale of its common stock were William F. Holbrook, Dollie R. Holbrook, James W. Holbrook and Anne Holbrook. The corporation supplies pipe fittings, couplings and valves to the fire protection industry. Respondent Barrington Associates (Barrington), a California general part-

nership, is an investment banking firm which specializes in mergers and acquisitions. None of its partners was a licensed real estate broker during the pertinent period.

About May 1986, James Holbrook met with James Freedman, a principal of Barrington. Their discussions led to a contract between All Points and Barrington which provided Barrington with the exclusive right to assist All Points in the sale of its "assets and/or common stock." Pursuant to the contract, Barrington agreed to "exercise [its] best efforts to sell the Company, or find an investor, on terms and conditions satisfactory to [All Points]." Barrington was to generate, screen and follow up on all leads, provide information about All Points to qualified buyers, prepare a corporate profile of All Points and assist in negotiations.

Ultimately, All Points itself located the purchaser of the business, although Barrington identified other prospective purchasers and handled initial negotiations with some of them. The sale included a transfer of All Points' common stock, payment of various consulting fees to the principals of All Points, and a lease with an option to purchase the land upon which the business was located.

On March 27, 1987, Barrington initiated binding arbitration before the American Arbitration Association, claiming a commission pursuant to its written agreement with All Points. All Points resisted Barrington's claim on a number of grounds, including Barrington's failure to possess a real estate broker's license. On November 25, 1987, the arbitrator awarded Barrington its claimed commission in the amount of $227,800, interest on a portion thereof and reasonable attorneys' fees.

All Points filed a petition and motion to vacate the arbitration award. The trial court denied the petition and confirmed the arbitration award. All Points appealed from the subsequent judgment. Thereafter, All Points filed a motion for a new trial, vacation of the judgment and reconsideration of the order confirming the award. The trial court denied All Points' motion and All Points appealed from the order of denial. The two appeals were consolidated.

### CONTENTIONS

All Points contends that Barrington's failure to be licensed as a real estate broker as required by Business and Professions Code section 10131[1] renders

---

[1] All statutory references are to the Business and Professions Code unless otherwise indicated.

the brokerage agreement void and illegal, and therefore the arbitration award must be vacated.

Barrington contends (1) it was not required to be licensed as a real estate broker because the licensing requirement does not apply to the sale of corporate stock, and (2) failure to confirm the arbitration award would result in All Points being unjustly enriched.

## DISCUSSION

### 1. *The Business Opportunity Licensing Requirement and Its History*

Originally, the licensing requirement for business opportunity transactions was distinct from that for real estate transactions. Some 52 years ago, the California Legislature enacted legislation requiring any person acting as a business opportunity broker or salesman to possess such a license. (Stats. 1937, ch. 785, §§ 1, 14, pp. 2235, 2245.) This requirement was codified in the Business and Professions Code in 1943 as a separate chapter of the Real Estate Law (§ 10250 et seq.) entitled "Business Opportunity Regulations," under the Department of Investment, Real Estate Division (former § 10000 et seq.). (Stats. 1943, ch. 127, § 1, p. 844.) From its inception, the business opportunity licensing requirement did not exempt incorporated businesses.[2]

In practice many business opportunity licensees also possessed a real estate broker's license. Nevertheless, confusion arose as to whether a business opportunity broker's license, a real estate broker's license or both were required, when a business opportunity transaction involved real estate. (Review of 1965 Code Legislature (Cont.Ed.Bar 1985) p. 14.) To simplify and clarify the law, the Legislature in 1965 merged the real estate and business opportunity licenses under the supervision of the Department of Real Estate. (Stats. 1965, ch. 172, p. 1133; *ibid.*) Thereafter, one who negotiated the sale of a business opportunity fell within the definition of a "real estate broker" (§ 10131), and was required to have a real estate license (§ 10130).[3] ■ This historical background establishes that the definition of a "busi-

---

[2] Otherwise there would have been no need to exempt corporations engaged in transactions involving their own property, as provided in the original statute: "The provisions of this act shall not apply to anyone who shall directly perform any of the acts aforesaid with reference to his own property or, in the case of corporations, through their regular officers receiving no special compensation therefor perform any of the acts aforesaid with reference to their, to wit, said corporations, own property . . . ." (Stats. 1937, ch. 785, § 2, p. 2236.) (*Tognazzini* v. *Jordan* (1913) 165 Cal. 19, 23 [130 P. 879].)

[3] Section 10130 provides: "It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department."

ness opportunity" does not necessarily include real property, but that it may.

Subdivision (a) of section 10131 currently provides: "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: [¶] (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property or a *business opportunity*." (Italics added.)

Section 10030 defines a "business opportunity": "As used in this part, the words 'business opportunity' shall include the sale or lease of the business and goodwill of an existing business enterprise or opportunity."

Real estate licensees must meet experience and training qualifications (§ 10150.6) and may be required to provide proof of honesty and truthfulness (§ 10153). (See *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18 [7 Cal.Rptr. 328], cert. denied 366 U.S. 910 [6 L.Ed.2d 235, 81 S.Ct. 1086].) The applicant must pass a written examination to demonstrate knowledge of English and arithmetical computation common to real estate and business opportunity practices, and an understanding of "the principles of real estate and business opportunity conveyancing, . . . the principles of business and land economics and appraisals, . . . the principles of real estate and business opportunity practice and the canons of business ethics pertaining thereto," as well as the regulations of the Real Estate Commissioner. (§ 10153.) ■ The purpose of these licensing requirements is to protect the public from incompetent or untrustworthy practitioners. (See *Schantz* v. *Ellsworth* (1971) 19 Cal.App.3d 289, 292-293 [96 Cal.Rptr. 783].)

Without a required license, a person acting as a real estate broker as defined is unable to enforce a contract to seek recovery of any earned commission in a court of law. (§§ 10130, 10136.)[4]

## 2. *The Definition of "Business Opportunity"*

Until the current controversy, there has been little discussion over the meaning of "business opportunity" and the type of transaction requiring a

---

[4] In regard to partnerships, such as Barrington, section 10137.1 provides: "Nothing contained in this division shall preclude a partnership from performing acts for which a real estate broker license is required, provided every partner through whom the partnership so acts is a licensed real estate broker."

license.[5] The few reported California opinions which concern the licensing requirements of the person who negotiates the sale of an incorporated business do not address the issue of the business opportunity licensing requirement, but rather the concomitant question of the need for a securities broker's license, often in *addition* to the business opportunity or real estate broker's license. In these cases, the acknowledged business opportunities or real estate transactions, which resulted in the transfer of corporate stock, concerned a building (*Owen* v. *Off* (1951) 36 Cal.2d 751 [227 P.2d 457]),[6] a broadcasting company and its radio station (*Stoll* v. *Mallory* (1959) 173 Cal.App.2d 694 [343 P.2d 970]),[7] a resort and marina business (*Weber* v. *Jorgensen* (1971) 16 Cal.App.3d 74 [93 Cal.Rptr. 668]),[8] a mortgage company (*Lyons* v. *Stevenson* (1977) 65 Cal.App.3d 595 [135 Cal.Rptr.

---

[5] A number of California cases have dealt with the issue of the "finder's exception" which exempts a person who merely finds a buyer, but does not negotiate a transaction, from the licensing requirements. (See, e.g., *Crofoot* v. *Spivak* (1952) 113 Cal.App.2d 146 [248 P.2d 45].) The parties do not contend that the finder's exception applies in this case.

[6] In *Owen* v. *Off, supra,* 36 Cal.2d 751, the California Supreme Court held that a licensed real estate broker could not enforce a contract for a commission for his services in connection with the sale of corporate stock because he was not licensed as required by the Corporate Securities Act. The real estate broker was employed to sell a building but before he could find a purchaser it was decided for tax purposes to sell the stock in the corporation which owned the building. (*Id.,* at p. 753.)

[7] In *Stoll* v. *Mallory, supra,* 173 Cal.App.2d 694, a licensed real estate and business opportunity broker "was engaged to secure a purchaser for a radio station business, not to find a buyer for Peabody's stock. [Peabody owned all but about 150 shares of the 7,000 outstanding shares of the company. (*Id.,* at p. 696.)] Mallory's [the manager of the radio station] first letter to plaintiff states: 'We would like to receive $150,000 for the *station* . . .' (Emphasis added.) Plaintiff did not learn that Peabody wished to sell his stock until the buyers and seller were brought together. The memorandum of agreement signed by them state[d] that Peabody [was] selling his interest in the 'Broadcasting Company and its radio station K.S.J.O., together with all equipment, land, buildings, supplies and other assets . . .' The memorandum further stated: '*Incident to this sale,* seller guarantees to deliver 100% of the corporate stock . . . *delivery of the assets agreed to be sold* will be made free and clear of all encumbrances . . .' (Emphasis added.) Plaintiff did not participate in the negotiations other than to bring the parties together and at no time did he represent himself as dealing in stocks or offer for sale or negotiate the sale of stock." (*Id.,* at p. 699.) The court held that plaintiff could recover his commission because he was not required to be licensed under the Corporate Securities Act. It distinguished *Owen* v. *Off, supra,* as a case where the plaintiff was employed by the defendants for compensation to sell their stock.

[8] *Weber* v. *Jorgensen, supra,* 16 Cal.App.3d 74, held that a licensed real estate broker was not required to have a securities broker's certificate to sue for his commission. At the time of the original listing agreement for the sale of Echo Chalet resort and marina business, the sole shareholder and owner instructed the broker plaintiff that he would transfer title to the property (consisting of a lease, a special use permit, a license, improvements and personal property thereon) (*id.,* at p. 77) by transferring all the stock in his corporation, Echo Chalet, Inc., which held the lease, permits and licenses, to the buyers, " '*as an incident to the sale of the property,* and that the stock transfer agreement would be prepared and handled by an attorney and not by the plaintiff.' " (*Id.,* at pp. 82-83, italics in original.)

457])[9] and a mortuary (*Nationwide Investment Corp. v. California Funeral Service, Inc.* (1974) 40 Cal.App.3d 494 [114 Cal.Rptr. 77]).

Only *Nationwide Investment Corp. v. California Funeral Service, Inc., supra,* 40 Cal.App.3d 494, presented a situation similar to the one here. The *Nationwide* court described the case as "atypical" in that plaintiff "Nationwide [sought] a commission for successfully negotiating the sale of a business to defendant although not licensed as a real estate broker or as a securities broker." (*Id.,* at p. 499.) However, the *Nationwide* court did not address the real estate licensing issue but held that Nationwide, an investment company which negotiated the purchase of all the shares of a mortuary on behalf of a client, was required to have a securities broker's license as it was engaged in the business of effecting transactions in securities and therefore could not maintain an action to collect its commission.[10]

The Ninth Circuit Court has interpreted the California business opportunity licensing requirements in *Meisner v. Reliance Steel & Aluminum Co.* (9th Cir. 1959) 273 F.2d 49, holding that an out-of-state resident who assisted in finding a buyer for the "assets or capital stock" of Reliance Steel, a California corporation, and then actively participated in the negotiations resulting in the sale of the assets was required to have a business opportunity broker's license to maintain an action for his commission. (*Id.,* at pp. 50, 53.)

In accordance with the principle of statutory interpretation that "[c]ourts must give effect to the words of a statute according to their usual and ordinary meaning [Citations.]" (*Gonzales & Co. v. Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172, 175 [198 Cal.Rptr. 479]), we find that the sale or purchase of a "business opportunity" encompasses any transfer of the ownership of an entire ongoing business in corporate form whether by transfer of all the stock or all the assets. Other courts interpret-

---

[9]*Lyons v. Stevenson, supra,* 65 Cal.App.3d 595, held that the real estate broker was entitled to his commission even though he was not licensed as a corporate securities broker. The court found no public policy objection to his recovering a commission even though he knew that the mortgage company which was sold was a corporation. The court explained that the broker was not retained to sell securities and neither the plaintiff nor defendant considered the method by which the "business" would be transferred. (*Id.,* at p. 603.)

[10]The court limited its holding to the securities broker's license issue: "We agree with the parties that this was a securities transaction, and we determine only whether Nationwide was a broker-dealer and required to have a securities broker's license." (*National Investment Corp. v. California Funeral Service, Inc., supra,* 40 Cal.App.3d 494, 499.) However, in dicta the court noted: "[H]ad Humphrey Chula Vista Mortuary not been a corporation but had sold all of its assets instead of stock to CFS, with Nationwide being the intermediary and negotiating the deal, Nationwide would have been required to have a real estate broker's license." (*Id.,* at p. 502, fn. 8.)

ing similar state licensing provisions have reached the same conclusion. (See, e.g., *Shochet Securities, Inc.* v. *First Union Corp.* (S.D.Fla. 1987) 663 F.Supp. 1035, 1037; *Springer* v. *Rosauer* (1982) 31 Wn.App. 418 [641 P.2d 1216, 1218]; *Schmitt* v. *Coad* (1979) 24 Wn.App. 661 [604 P.2d 507, 508-509]; *Lakeshore Financial Corp.* v. *Comstock* (W.D.Mich. 1984) 587 F.Supp. 426, 428-429, affd. (6th Cir. 1985) 779 F.2d 51; *Cardillo* v. *Canusa Extrusion Engineering* (1985) 145 Mich.App. 361 [377 N.W.2d 412, 414-416].)

Barrington contends that as a seller of stock has no vendible interest in the goodwill of the business carried on by the corporation and cannot transfer any part of it, a corporate stock sale does not constitute a "business opportunity."[11] This contention is meritless. There is no question that the sale in this case included a transfer of the goodwill of the business, affecting the purchase price. Furthermore, the goodwill of a business conducted by a corporation is the property of the corporation (*Brown* v. *Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477, 488 [154 Cal.Rptr. 170]); therefore, the purchaser of the corporation not only acquired the "business" but the "goodwill" as well.

Barrington also contends that the Legislature has specifically declared that one who assists in the sale of corporate stock is not a real estate broker, citing section 10131.3. This contention is meritless as well.

Section 10131.3 provides: "A real estate broker within the meaning of this part is also a person who, for another or others, for compensation or in expectation of compensation, issues or sells, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of securities as specified in Section 25206 of the Corporations Code.

"The provisions of this section do not apply to a broker-dealer . . . licensed by the Commissioner of Corporations . . . ."[12]

---

[11] The original 1937 statute provided that "the words 'business opportunity' shall mean and include business, business opportunity and/or good will of an existing business." (Stats. 1937, ch. 785, § 2, p. 2236.) When the business opportunity licensing requirements were combined with the real estate licensing requirements in 1965, the definition was changed to its current language: "As used in this part, the words business opportunity shall include the sale or lease of the business and goodwill of an existing business enterprise or opportunity." (Stats. 1965, ch. 172, § 3, p. 1134.)

[12] A securities broker-dealer is required to be licensed by the Commissioner of Corporations.

Corporations Code section 25210 provides: "(a) Unless exempted under the provisions of Chapter 1 (commencing with Section 25200) of this part, no broker-dealer shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this

Section 10131.3 does not *delete* business opportunities transactions which are effected by means of a stock transfer, but *adds* to the definition of real estate broker those persons who assist in certain noncorporate securities transactions in small real estate investment entities. Section 10131.3 refers to those securities "as specified in Section 25206 of the Corporations Code," i.e., "any interest in any general or limited partnership, joint venture, unincorporated association, or similar organization, (but not a corporation) owned beneficially by no more than 100 persons and formed for the sole purpose of, and engaged solely in, investment in or gain from an interest in real property, including, but not limited to, a sale, exchange, trade or development." (Corp. Code, § 25206.) Adding these *securities transactions,* which are neither real estate nor business opportunity transactions, in no respect limits the definition of real estate broker in section 10131, subdivision (a).

### 3. *The Sale of All Points*

■ The main thrust of Barrington's argument is that the sale of All Points was more in the nature of a securities transaction than the transfer of a business opportunity. Barrington suggests that when a business is transferred through the purchase and sale of stock, rather than a purchase of assets and goodwill, the business opportunity licensing requirements do not apply.

This view exalts *form* over *substance* of the regulated transactions and ignores the purposes of the regulation. The legal significance of such exaltation has been acknowledged by courts in various contexts. In *Weber* v. *Jorgensen, supra,* 16 Cal.App.3d 74, the court held that a real estate broker was not required to have a securities broker's certificate to sue for his commission, even though the sale of the resort and marina business took the

---

state unless such broker-dealer has first applied for and secured from the commissioner a certificate, then in effect, authorizing such person to act in that capacity.

"(b) No person shall, on behalf of a broker-dealer licensed pursuant to Section 25211, or on behalf of an issuer, effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless such broker-dealer and agent have complied with such rules as the commissioner may adopt for the qualification and employment of such agents."

Section 25206 of the Corporations Code referred to in the real estate licensing provision of section 10131, provides: "A broker licensed by the Real Estate Commissioner is exempt from the provisions of Section 25210 [requiring broker/dealer licensing] when engaged in transactions in any interest in any general or limited partnership, joint venture, unincorporated association, or similar organization (but not a corporation) owned beneficially by no more than 100 persons and formed for the sole purpose of, and engaged solely in, investment in or gain from an interest in real property, including, but not limited to, a sale, exchange, trade or development. . . ."

form of a stock transfer. In so holding the court remarked: "From the complaint, we may infer that the shares of the corporation had been duly issued and were outstanding. Under these circumstances, it would normally be a matter of complete indifference to the buyers allegedly produced by plaintiff whether the resort and marina were being operated by defendant or by the corporation. The buyers, of course, would be at complete liberty to utilize the already existing corporate structure, or dissolve the corporation and operate the resort in their own proprietary capacity." (*Id.,* at p. 85.) The court observed that many owners of investment property "often adopt the corporate form of ownership and organization for tax and other purposes" and that "the services of real estate brokers as well as many other specialists are so often essential to the guidance of property owners in the handling and disposition of their property." (*Id.,* at pp. 85-86.)

Similarly, in holding that the sale of an executive placement firm was not a sale of securities for purposes of the Corporate Securities Act qualification requirement, the California Supreme Court stated in *Fox* v. *Ehrmantraut* (1980) 28 Cal.3d 127, 138-140 [167 Cal.Rptr. 595, 615 P.2d 1383], that California courts look through form to substance to further the purposes of the act. The Court contrasted securities transactions with the sale of a business:

" 'It is settled that the Corporate Securities Law was not intended to afford supervision and regulation of instruments which constitute agreements with persons who expect to reap a profit from their own services or other active participation in a business venture. Such contracts are clearly distinguished from instruments issued to persons who, for a consideration paid, stipulate for a right to share in the profits or proceeds of a business enterprise to be conducted by others; and the court will look through form to substance to discover whether in fact the transaction contemplates the conduct of a business enterprise by others than the purchasers, in the profits or proceeds of which the purchasers are to share. [Citations.]' " (28 Cal.3d at p. 139.)

We find that the sale of All Points was in substance the sale of a "business opportunity," even though it was accomplished through a transfer of corporate shares, and therefore the person negotiating the transaction was required to have a real estate broker's license. Whether such transaction also

fell within the scope of securities regulations is irrelevant.[13] Regulation under one statute or regulatory scheme does not preclude regulation pursuant to other statutory provisions.[14] Although the Legislature has provided for coordination of regulation between the Commissioner of Corporations and the Real Estate Commissioner in certain limited areas of real estate-related securities, the statutory scheme provides no indication that business opportunity regulation and securities regulation in general are mutually exclusive or dismembered from one another. In fact, our review discloses a legislative intention to provide a synthesis of harmony.

### 4. *The Inability to Enforce the Arbitration Award*

"[A]rbitration has become an accepted and favored method of resolving disputes, praised by the courts as an expeditious and economical method of relieving over-burdened civil calendars." (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178]; citations omitted.)

---

[13] This issue is not before us. Barrington contends that, as a merger and acquisition firm, it is exempt from the securities broker licensing requirement of Corporations Code section 25210 pursuant to a rule promulgated by the Commissioner of Corporations. All Points does not dispute this contention.

The exemption for merger and acquisition firms is set forth in title 10 of the California Code of Regulations, section 260.204.5, which provides: "An exemption from the provisions of Section 25210 of the Code is hereby granted, as being necessary and appropriate in the public interest and for protection of the investors, to any person who effects transactions in securities in this state only in connection with mergers, consolidations or purchases of corporate assets, and who does not receive, transmit or hold for customers any funds or securities in connection with such transactions."

[14] The securities-broker exemption recognizes that merger and acquisition firms effect transactions which are unlike the usual securities transaction. In Commissioner's Opinion No. 76/15C, the Commissioner of Corporations addressed the applicability of the exemption to transactions which do not appear to fall within the "language" of the rule. "For example, two companies may commence discussions of a possible combination of their enterprises. The exact type of transaction by which the combination will be effected will be a product of accounting, tax and legal advice. The transaction may be a merger, consolidation or purchase of corporate assets or an exchange of shares or purchases of one company's shares by another." The Commissioner explained that "the exemption from the certification requirement of Section 25210 of the law provided by Rule 204.5 is intended to apply to those broker-dealers whose activities are limited to bringing together companies for the purpose of forming a single enterprise. While the Rule uses the terms 'mergers, consolidations, or purchases of corporate assets,' these terms, especially consolidation, must be interpreted more broadly than as used in other Sections of the Law . . . . Accordingly, a broker-dealer whose intent is to effect transactions only in connection with mergers, consolidations or purchases of corporate assets and who meets the other requirements of Rule 204.5, may avail himself of the exemption provided by that Rule if the transactions in which it participates take forms which do not fall within the literal terms of the exemption because of advice other than the advice of the broker-dealer."

■ Accordingly, every reasonable intendment is indulged to give effect to arbitration proceedings. "Courts may not examine the merits of the controversy, the sufficiency of the evidence supporting the award, or the reasoning supporting the decision. [Citation.] A court may not set aside an arbitration award even *if the arbitrator made an error in law or fact.* [Citations.]" (*Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450-451 [157 Cal.Rptr. 167], italics in original.)

"Under certain circumstances an award based on an error in law may be set aside on the ground that it was in excess of the arbitrator's powers. (Code Civ. Proc., § 1286.2, subd. (d); *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 770 [ ].) ■ A trial court, however, is limited in its authority to vacate the award of an arbitrator, even in the event of an error of fact or law. The mere fact that an arbitrator reached an erroneous conclusion based on an error of law which does not appear on the face of the record will not invalidate the award; on the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. (*Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 [ ]; *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d at p. 771.)" (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1090-1091 [213 Cal.Rptr. 62].)[15]

In *Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603 [204 P.2d 23], the parties to a building contract submitted to arbitration a dispute over the amount of payment due. The property owner asserted that the contractors were not properly licensed. The parties stipulated that one of the partners and the partnership itself did not have contractor's licenses during performance of the work. The arbitrator found in favor of the contractors and the trial court affirmed the arbitration award.

In reversing the confirmation, the Supreme Court explained: "[I]t has been repeatedly declared in this state that 'a contract made contrary to the terms of a law designed for the protection of the public and prescribing a penalty for violation thereof is illegal and void, and no action may be brought to enforce such contract.' [Citations.] . . .

". . . [T]he rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of

---

[15]Code of Civil Procedure section 1286.2, subdivision (d) provides as follows: "Subject to Section 1286.4, the court shall vacate the award if the court determines that: [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted . . . ."

illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award. When so raised, the issue is one for judicial determination upon the evidence presented to the trial court, and any preliminary determination of legality by the arbitrator, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, should not be held to be binding upon the trial court." (*Id.*, at pp. 607, 609; *Webb* v. *West Side District Hospital* (1983) 144 Cal.App.3d 946, 949 [193 Cal.Rptr. 80].)

". . . [I]t is generally held that 'a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself.' " (*Loving & Evans* v. *Blick, supra,* 33 Cal.2d at p. 610, citation omitted.)

Inherent in the arbitration award granting Barrington a commission for its involvement in the sale of All Points is the finding that the underlying contract was legal and enforceable. ■ However, the issue of illegality is one for judicial determination upon the evidence presented to the trial court, and the arbitrator's finding, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, is not binding on the trial court. (*Loving & Evans* v. *Blick, supra,* 33 Cal.2d 603, 609.)

■ Barrington contends that it is entitled to recover its fee from All Points because at the time of execution of the contract it was not "a clear violation" of law or public policy to assist in the sale of a client's corporate stock without possessing a real estate broker's license, in contrast to the situation in *Loving & Evans* v. *Blick, supra,* 33 Cal.2d at page 607. They suggest that the statutory language is unclear in its command that a merger and acquisition specialist must possess a real estate broker's license, pointing to the declarations of various individuals in the industry that it was the "custom and practice" of members of the investment banking community not to be so licensed. They also argue that no evidence was produced that the Department of Real Estate has "any consistent enforcement policy regarding the sale of corporate stock by an investment banker and/or merger and acquisition specialist which does not possess a real estate broker's license," and claim that its principals were "extremely qualified by way of background and experience" to perform the contract.

We recognize and acknowledge that there may be special circumstances where the purpose of the legal requirement would not be advanced by

denying relief. "[R]ules denying relief to parties to illegal contracts are subject to a wide range of exceptions. In each case, the grant or refusal of relief depends upon the public interest involved in the particular kind of illegality, including the policy of the transgressed law. (See, 6A Corbin, Contracts (1962), § 1534, pp. 818-819.) 'In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved.' (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 151 [].)" (*Weber* v. *Jorgensen, supra,* 16 Cal.App.3d at pp. 84-85.) In *Weber,* discussed above, the court found the lack of a *securities broker's certificate* raised "no public policy objection in the nature of the services alleged by plaintiff . . . ." (*Ibid.*) The requirement for a certificate was unimportant under the facts of the case. The seller had instructed the plaintiff that the transfer of the corporate stock was incidental to the sale of the real property, and that the stock transfer agreement would be prepared and handled by an attorney, not by the real estate broker plaintiff.

This is not such a case. Enforcement of the contract for a commission would be in direct contravention of the statute and against public policy. That conclusion is not altered by the fact that there may be persons engaging in similar activities who have unintentionally misconstrued the law and may face harsh consequences. However, "[c]onsequences cannot alter statutes, but may help to fix their meaning"[16] The Department of Real Estate, as amicus, has expressed its opinion that section 10131 applies in the case of a sale of a corporate business opportunity. Certainly the sale of All Points, as an ongoing enterprise, was not "incidental" to the sale of its stock. Indeed, the only purpose of the stock transfer was to effect the sale of the business itself.

The Legislature selected the specific means to protect the public and has expressed its intention in section 10136 which states, "No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose." In light of the statute's mandatory dictation, we must conclude that Barrington cannot pursue its action for a commission.

---

[16] *Matter of Rouss* (1917) 221 N.Y. 81 [116 N.E. 782, 785] (Cardozo, J.).

Barrington lastly contends that All Points will be unjustly enriched if the contract is not enforced. However, this court cannot "resort to equitable considerations in defiance" of the mandate of the Legislature. (See *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 152 [308 P.2d 713].)

5. *Attorney's Fees*

Having ultimately prevailed, All Points is entitled to attorney's fees as provided in the parties' agreement. (Code Civ. Proc., § 1717; *M. C. & D. Capital Corporation* v. *Gilmaker* (1988) 204 Cal.App.3d 671 [251 Cal.Rptr. 178].)

## DISPOSITION

Judgment reversed and the case remanded to the trial court for further proceedings consistent with this opinion. All Points is awarded costs on appeal.

Klein, P. J., and Danielson, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 7, 1989.