Filed 2/1/21  Asset Management Consultants v. Barrons CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| ASSET MANAGEMENT CONSULTANTS, INC., et al., <br><br>  Respondents, <br><br>  v. <br><br> JAMES GLENN BARRONS et al., <br><br>  Appellants. | G058398 <br><br> (Super. Ct. No. 30-2019-01059541) <br><br> ORDER MODIFYING OPINION; DENYING PETITION FOR REHEARING; DENYING REQUEST TO VACATE SUBMISSION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on January 5, 2021, be modified as follows:

On page 2, the second full paragraph, beginning "But respondents disclosed to" is deleted and the following paragraph is inserted in its place:

According to an arbitrator's ruling, however, respondents disclosed to appellants that they were doing exactly that.  For example, one disclosure stated, "The purchase price of the property being acquired by the Co-Owners includes a commission to be paid to AMC by the Seller (see 'Manager's Compensation and Fees').  Accordingly, the Seller would have sold the property for a lower Purchase price if it were not obligated to pay such commission."  And appellants waited eight years to file their demand for arbitration against respondents.  Recently, in *Stella v. Asset Management Consultants*,

*Inc.* (2017) 8 Cal.App.5th 181 (*Stella*), another appeal arising from this set of real estate transactions, the court found the disclosures commenced the statute of limitations and that the plaintiff's claim was thus time-barred. This court came to a similar conclusion in *WA Southwest 2*, *LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148 (*WA Southwest 2*).

Also on page 2, last paragraph, second line, the word "Unsurprisingly" is deleted so that the sentence reads:

They did not get it.

There is no change in the judgment.

Appellants' petition for rehearing is DENIED.

On October 20, 2020, this cause was argued and submitted. On January 20, 2021, the clerk's office received from appellants a document titled "appellants' motion for judicial notice" and supporting exhibits. The motion is deemed to be a request to vacate submission to permit appellants to file a motion for judicial notice and exhibits. (Cal. Rules of Court, rule 8.256(d)(1) [no further briefs or papers may be filed after a cause has been argued and submitted].) The clerk of this court is directed to file the request forthwith. The request to vacate submission to permit appellants to file a motion for judicial notice is DENIED.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

2

Filed 1/5/21  Asset Management Consultants v. Barrons CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASSET MANAGEMENT CONSULTANTS, INC., et al., <br><br> Respondents, <br><br> v. <br><br> JAMES GLENN BARRONS et al., <br><br> Appellants. | G058398 <br><br> (Super. Ct. No. 30-2019-01059541) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge.  Affirmed.

Catanzarite, Kenneth J. Catanzarite, Nicole M. Catanzarite-Woodward and Eric V. Anderton for Appellants.

Jackson Tidus and Charles M. Clark for Respondents.

\*          \*          \*

This appeal arises from a series of real estate investments that cratered during the great recession. The hearings and appeals spawned by these investments are legion. Although there are several different investments and various appellants that comprise the chorus of litigation, each investment was structured the same, and the basic claim asserted by each appellant is the same. Appellant investors claim that respondents, who acted as middlemen between appellant investors and the seller of the property, committed fraud by advertising a purchase price of the property that was higher than the appraised value. Respondents' covert purpose was to reimburse the seller for fees it was contractually bound to pay to respondents. By reimbursing the seller from the purchase price, the economic effect was to shift the financial burden of paying those fees to appellants.

But respondents disclosed to appellants that they were doing exactly that. For example, one disclosure stated, "The purchase price of the Property has been negotiated to include a commission to be paid to Manager of the General Partner's Manager by the Seller . . . . Accordingly, the Seller would have sold the Property for a lower Purchase Price if it were not obligated to pay such commission." And appellants waited eight years to file their demand for arbitration against respondents. Recently, in *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181 (*Stella*), another appeal arising from this set of real estate transactions, the court found the disclosures commenced the statute of limitations and that the plaintiff's claim was thus time-barred. This court came to the same conclusion in *WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148 (*WA Southwest 2*).

Appellants in this case were hoping for a different result in arbitration. Unsurprisingly, they did not get it. The arbitrator held a demurrer-type hearing and found appellants' claims were time-barred. The trial court subsequently confirmed the award in favor of respondents. On appeal, appellants attack the court's ruling on various grounds, none of which are persuasive.

Appellants' first and most colorable argument is that the contract containing the arbitration provision was unenforceable due to illegality, and thus the arbitrator had no jurisdiction. In particular, respondents were not licensed real estate brokers, yet the contract authorized respondents to perform tasks that only licensed brokers may legally perform. Appellants' appear to be right in that regard. But other aspects of the contract are not infected by illegality, such as respondents' duty to manage appellants' business affairs, and keep books and records, neither of which requires a broker's license. Where, as here, only part of the contract containing an arbitration provision is illegal, the arbitrator decides whether to sever the illegal portion. To make that call, the arbitrator necessarily has jurisdiction.

Appellants' remaining arguments concern various procedural aspects of the arbitration and are far less plausible. They argue, for example, that the statute of limitations simply does not apply in an arbitration, and thus claims may be brought long after the statute has run. They also argue that JAMS arbitrators are forbidden from engaging in a demurrer-type proceeding and instead *must* hold an evidentiary hearing, no matter how defective the pleading. For the reasons explained below, we reject those positions and affirm the judgment.

PROCEDURAL HISTORY[1]

Because the basic structure of the real estate transaction at issue here has been detailed in no fewer than 19 appellate court opinions, and because this is an appeal from an order confirming an arbitration award, we will not engage in a detailed recitation here. We refer the reader to *Stella*, *supra*, 8 Cal.App.5th 181 and *WA Southwest 2*, *supra*, 240 Cal.App.4th 148, both of which contain detailed descriptions of the investments.

---

[1] Appellants' unopposed motion for judicial notice is granted.

3

The specific investment at issue here was detailed in *Aerovault Barrons, LLC v. Cushman & Wakefield, Inc.* (Aug. 5, 2016, G051701) [nonpub. opn.]. For present purposes, the most important fact is that appellants entered into the subject transactions in 2006.[2]

Respondents in this case are, in general terms, the organizers, offerors, and managers of the real estate investments.[3] Appellants never filed a complaint in the superior court against respondents. Instead, in January 2014, appellants were compelled to arbitration in a related case. Afterward, appellants voluntarily served a demand for arbitration on respondents in March 2014.

In 2015 the arbitrator gave respondents leave to demur to the complaint. The demurrers were filed in July 2015. For reasons that are unclear in the record, the demurrer still had not been decided by January 2017 when the aforementioned *Stella* opinion was filed. In October 2017, the arbitrator took the demurrers off calendar to determine whether several arbitrations should be consolidated. In March 2018 it was decided that the arbitrations would be consolidated. At the same time, the arbitrator set an evidentiary hearing on the issue of delayed discovery and the tolling of the statute of limitations for September 2018. That hearing was cancelled, however, because respondents did not pay their share of the fees for the evidentiary hearing. In November 2018, the arbitrator reverted to holding a demurrer hearing without evidence.

The demurrer was finally decided—almost five years after the commencement of the arbitration—in January 2019 in favor of respondents. The only issue before the arbitrator in these hearings was the statute of limitations. In a detailed ruling, the arbitrator held that the documents attached to appellants' statement of claims

---

[2]     The appellants are: James Glenn Barrons and Linda M. Barrns, individually and as trustees of the Barrons Family Trust dated August 16, 1988; Aerovault Barrons, LLC; and Eaton Barrons, LLC.

[3]     The respondents are: Asset Management Consultants, Inc.; BH & Sons LLC; James R. Hopper; Kevin Hopper; Rick Hamilton; and Russell Hardt.

4

demonstrated as a matter of law that the statute of limitations expired before appellants filed their claim. The arbitrator relied on the same disclosures relied upon by the courts in *Stella*, *supra*, 8 Cal.App.5th 181 and *WA Southwest 2*, *supra*, 240 Cal.App.4th 148, and described those cases as "binding and persuasive." The arbitrator concluded by finding that appellants "have been given numerous opportunities to amend their complaints . . . to cure the defects regarding pleading delayed discovery with specificity, and further finds that this defect cannot be cured by further amendments."

Respondents petitioned to confirm the arbitration award. The court granted the petition and entered judgment on the arbitration award. Appellants appealed.

DISCUSSION

Generally, an arbitration award is not reviewable by the courts. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) There are exceptions to that rule, of course. Most notably, Code of Civil Procedure section 1286.2 provides six grounds for vacating an award, two of which appellants rely upon here. First, Code of Civil Procedure section 1286.2, subdivision (a)(4), permits vacatur where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Second, Code of Civil Procedure section 1286.2, subdivision (a)(5), permits vacatur where "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to . . . hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." Where, as here, the underlying judgment did not resolve contested facts, we review a court's ruling on a petition to confirm an arbitration award de novo. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217.)

5

*Illegality in the Underlying Contract*

Appellants first contend the contract containing the arbitration provision was unenforceable because it was illegal. As a result, appellants contend, the arbitrator lacked subject matter jurisdiction over appellants' claims.[4] The court ruled against appellants, finding the agreement was, at most, only partially infected by illegality, and thus it was the arbitrator's task to decide that issue. We agree with the trial court's analysis.

The underlying contract containing the arbitration provision in this case is the cotenancy agreement. The cotenancy agreement essentially governed the relationship between the investors (tenants in common or TIC) and the manager, which, in this case, was BH & Sons. In the agreement, the investors "delegate responsibility for the management and supervision of the Cotenants Ownership Interests in the Property, and all decisions concerning the business and affairs of the Property," to the manager. This included the authorization "to sell, lease, or release a portion or all of the Property; or negotiate or re-negotiate indebtedness secured by a blanket lien on the Property." Additionally, the agreement required the manager to maintain a bank account for the investors, as well as accounting records. Further, the manager was required to issue an annual financial report with specified information. And the manager was required to provide each of the investors with information they would need for federal and state tax returns.

In California, certain activities involving real estate require a broker's license. "It is unlawful for any person to engage in the business of, act in the capacity of,

---

[4] Respondents contend this argument was forfeited because appellants voluntarily demanded arbitration against respondents. However, appellants had been compelled to arbitration under the same arbitration provision in a related matter. It is a stretch to call their subsequent demand for arbitration against respondents "voluntary." Were we to find a forfeiture, we would essentially be requiring appellants to engage in the pointless exercise of first filing a civil complaint against respondents. That would be a waste of everyone's time and resources.

6

advertise as, or assume to act as a real estate broker . . . within this state without first obtaining a real estate license from the department . . . ." (Bus. & Prof. Code, § 10130.) Business and Professions Code section 10131, in relevant part, defines a real estate broker as follows:  "A real estate broker within the meaning of this part is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: [¶] . . . [¶]  (b) Leases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants, or negotiates the sale, purchase, or exchanges of leases on real property, or on a business opportunity, or collects rents from real property, or improvements thereon, or from business opportunities."  A contract to perform real estate broker services with an unlicensed person is unenforceable.  (Bus. & Prof. Code, § 10136; *All Points Traders, Inc. v. Barrington Associates* (1989) 211 Cal.App.3d 723, 737 [vacating arbitration award based on contract with unlicensed real estate broker].)

Appellants contend the cotenancy agreement was illegal because it authorized BH & Sons, who is concededly not a licensed real estate broker, to lease units within the property.  Respondents do not dispute appellants' contention that, to the extent the cotenancy agreement authorizes BH & Sons to lease units within the property, it violates Business and Professions Code section 10130.  Instead, respondents contend, as the court found, that even if portions of the cotenancy agreement were illegal, they were severable, and the decision whether to sever was for the arbitrator.  We agree.

"If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement.  Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether.  [Citations.]  [¶]  By contrast, when—as here—the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, remains

7

arbitrable." (*Moncharsh, supra,* 3 Cal.4th at pp. 29-30.)  Here, the arbitration provision in the cotenancy agreement is not itself alleged to be illegal.  And the cotenancy agreement delegates management of the entire business operation to BH & Sons, not simply renting units.  This specifically includes keeping books and records for the business, but would also more generally include maintenance of the property and otherwise interacting with tenants on non-rent issues.  Those activities do not run afoul of Business and Professions Code section 10130.

In *MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796 the court reached a similar conclusion.  There, a management company sued on a contract to manage rental properties owned by the defendants.  (*Id.* at p. 799.)  The trial court had ruled in favor of the defendants, finding that the management company was acting as an unlicensed real estate broker and thus could not enforce the contract.  (*Ibid.*)  The Court of Appeal reversed.  It observed that Business and Professions Code section 10136 "does not prevent a plaintiff from seeking compensation for acts for which no real estate license was required.  Some of the services provided under the property management agreement required a real estate broker's license, but others did not.  A broker's license was required for offering for lease and leasing apartment units and collecting rents [citations], but was not required for other management duties such as causing repairs to made, decorating, and general maintenance." (*MKB Management, Inc.*, at p. 802.)

The same is true here, which means, under the authority of *Moncharsh, supra,* 3 Cal.4th 796, the issue of illegality was to be decided by the arbitrator.  Accordingly, the arbitrator had subject matter jurisdiction over the arbitration and acted within the scope of his authority under Code of Civil Procedure section 1286.2, subdivision (a)(4).

8

*Procedural Defects*

Appellants assert various procedural defects in the arbitration that, they claim, required the court to vacate the arbitration award. We find none of the remaining contentions persuasive.

Appellants begin by nitpicking aspects of the arbitrator's ruling in an attempt to portray it as an "abandon[ment]" of the demurrer procedures in favor of taking evidence against appellants. But even a cursory reading of the arbitrator's ruling dispels appellants' depiction. For example, appellants cite, without any context, the arbitrator's statement, "In each of these arbitrations, Claimants bear the burden of proof by a preponderance of the evidence." But this was a simple observation and did not form the basis of the arbitrator's decision. Similarly, appellants point to the arbitrator's recitation, "As the fact-finder, it is the Arbitrator's role to determine the credibility of the evidence and any conflicting interpretations of that evidence." But, once again, that statement was part of a more general recitation of the rules that apply to the interpretation of contracts. As the court aptly observed, "A review of the Arbitrator's decisions confirms that the Arbitrator, while occasionally quoting evidentiary standards, did not consider evidence outside of the scope of the pleadings or attached exhibits."

Appellants also contend the following comment by the arbitrator demonstrates he was operating outside of the pleadings: "The buyers agreed on a price of $33,250,000, a market price of $33,250,000, and an appraised value of $33,250,000. They saw the final number of $34,550,000, but did not question anyone about it, because they understood that the extra $1,300,000 was a commission, or some sort of fee to the sellers that the purchasers would have to bear." Appellants argue there is nothing in the pleadings establishing that they explicitly agreed to a market price of $33,250,000. But in context this was plainly the arbitrator's interpretation of the disclosures attached to the pleadings—i.e., the disclosures revealed the final price, the amount of the commission, and the fact that the final price was higher than the market price to account for the

9

commission.  Appellants simply needed to, as it were, put two and two together.  As a result, they were on inquiry notice that the actual value of the property was less than the sale price.  Again, there is nothing here to suggest appellants' rights were substantially prejudiced by an unfair hearing.

Elsewhere appellants fault the arbitrator for stating the following:  "Any of these buyers could figure out without a pen, pad of paper or calculator, that the fee of $1,300,000 upped the ultimate purchase price to $34,550,000—and this was enough to start asking questions.  But claimants *admit* they made no such investigation."  (Italics added.)  Appellants argue they made no such admission.  That comment from the arbitrator, however, was extraneous to his rationale.  The point was that appellants were on inquiry notice, not that they did or did not conduct due diligence.

Appellants second contention is that their rights "were substantially prejudiced by the refusal of the arbitrator[] to . . . hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."[5] (Code Civ. Proc., § 1286.2, subd. (a)(5).)  In particular, appellants proffered evidence that  "they never entered into an agreement setting or acknowledging an original/first purchase price, setting or acknowledging a market price and setting or acknowledging an appraised value for the Aerovault and Eaton Canyon transactions or, in any other capacity, had foreknowledge of an original/first purchase price."

This contention is easily met.  This was a demurrer hearing.  The point of evidence is to prove an allegation.  In a demurrer hearing, however, the allegations are assumed to be true—no proof is necessary.  So there was no need for the arbitrator to admit evidence.  If appellants had some fact they felt they could prove that was material, they simply needed to amend the operative pleading and allege it.  The arbitrator found

---

5        Appellants also advance a lengthy argument that the trial court misinterpreted the arbitrator's basis for his decision.  Since our review is de novo, however, we need not address that point.

10

that appellants had ample opportunity to do so. Accordingly, appellants rights were not "substantially prejudiced" by the exclusion of evidence.

Next, appellants argue that JAMS rules do not permit a demurrer, and thus the arbitrator exceeded his authority in conducting a demurrer hearing. But as the trial court pointed out, JAMS rule 22 states, "The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so." (See JAMS Comprehensive Arb. Rules & Procedures, rule 22(a).) So it does not matter that the JAMS rules do not explicitly permit a demurrer. Plainly a demurrer, firmly rooted in tradition and statutory law, is a "reasonable and appropriate" procedure for resolving a case.

Appellants further argue that Code of Civil Procedures section 1282.2, subdivision (d), precludes a demurrer in an arbitration. That provision states, "The parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses appearing at the hearing, but rules of evidence and rules of judicial procedure need not be observed. On request of any party to the arbitration, the testimony of witnesses shall be given under oath." But that provision, in context, is simply prescribing the minimum due process for an evidentiary hearing, not prohibiting a demurrer. In any event, that provision only applies subject to the proviso "[u]nless the arbitration agreement otherwise provides." (Code Civ. Proc., § 1282.2.) Here, the arbitration provision provides that the proceedings shall be held "in accordance with the rules then obtaining of the Judicial Arbitration and Mediation Services (JAMS)." As we already pointed out, the JAMS rules implicitly permitted a demurrer proceeding.

Next, appellants contend that—across the board—statutes of limitations do not apply in arbitrations. Under appellants' theory, apparently, a party could bring an arbitration 50 years after the statute has run. Unsurprisingly, appellants cite no authority supporting this remarkable conclusion. Instead, they engage in a bit of semantics. Statutes of limitations, they argue, prescribe the time limits on filing an "action." (E.g., Code Civ. Proc., § 335.1.) An "action," in turn, is "an ordinary proceeding in a court of

11

justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) An arbitration, however, is not a proceeding "in a court of justice." It is, therefore, not an action, and thus the statutes of limitations do not apply.

That is a cute argument, but it flies in the face of common sense, and it furnishes no basis for us to disturb the arbitration award. The contract specifies that California law applies. We interpret that to mean California law applies in the arbitration in the same manner it would in court—i.e., statutes of limitations apply. Moreover, even assuming appellants are correct, at most the arbitrator was guilty of legal error. We cannot vacate an award for mere legal error. (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 ["Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties. [Citation.] This is true even where, as here, an arbitration agreement requires an arbitrator to rule on the basis of relevant law, rather than on principles of equity and justice"].)[6]

Appellants' final contention is that the arbitrator exceeded his powers by relying on decisions from other arbitrators and from superior court judges that were subsequently reversed at the appellate level. In particular, appellants take issue with the following comment from the arbitrator: "The parties have spent a considerable time referring to the rulings of Arbitrators Chernick and Polsky and Judges Berle and Perk in related cases. On one hand, the Respondents cite to the rulings as persuasive, if not binding; on the other hand, the Claimants argue that some of the rulings have been

---

[6] The misapplication of a statute of limitations may be reviewable if it deprives a plaintiff of a hearing in a case involving an unwaivable statutory right. (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 669-670.) Appellants' action here sounds in tort. They make no claim to an unwaivable statutory right.

12

vacated, and thus are nullities. This Arbitrator cannot disregard these rulings, and then rule in a vacuum. The rulings were made after hundreds of collective hours of pleading, argument, research and consideration. However, this Arbitrator must emphasize that for the purposes of the arbitration in these consolidated cases, there need be no reliance on rulings in cases other than those that have been heard at the appellate level.  The pleadings, briefs and argument presented by the demurring parties are sufficient to support a wholly independent ruling."

We fail to see how a general statement that the arbitrator looked at reversed decisions overcomes the massive hurdle of becoming reviewable in court.  It is clear the arbitrator did not view them as binding.  He was simply considering them to the extent they were helpful.  We see no problem with that, especially since he explicitly described *Stella*, *supra*, 8 Cal.App.5th 181 and *WA Southwest 2*, *supra*, 240 Cal.App.4th 148 as "binding and persuasive."

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs incurred on appeal.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.

13